MIKE BUSH v. THE STATE.

No. 1647.   Decided May 10, 1899.

**1.   Continuance—Where Similar Testimony Was Adduced.**

Where it appears that substantially the same testimony as that sought in an application for continuance was adduced on the trial, it will be held that defendant can not be heard to complain of the refusal to grant the continuance.

**2.   Same.**

Even where the absent testimony is material and probably true, a continuance will not be granted unless such absent testimony would, if adduced, probably induce a more favorable verdict to the accused than that which has been found against him.

**3.   Manslaughter—Requested Instructions.**

It is not error to refuse requested instructions presenting the law of manslaughter where the evidence does not suggest such an issue.

**4.   Murder—Self-Defense—Instructions.**

On a trial for murder, where defendant asked the court to instruct the jury, "that defendant had the right to arm himself with a deadly weapon and go to the place where the homicide occurred and at the time he did; and, by such acts, his right of self-defense will be neither abrogated nor abridged;" Held, the instruction is too broad and does not state the circumstances or any circumstance which would authorize defendant to arm himself and seek his adversary.

**5.   Same.**

In order to justify a homicide on the ground of self-defense, either with or without threats, the danger must be apparently or really immediate and pressing, imminent and unavoidable.

APPEAL from the District Court of Wichita.   Tried below before Hon. GEORGE E. MILLER.

Appeal from a conviction for murder in the second degree; penalty, tewnty-five years imprisonment in the penitentiary.

The indictment charged appellant with the murder of J. D. Modgling, on the 28th day of February, 1898, by shooting him with a pistol.

The two parties to this homicide were employes on the farm of J. D. Avis, some two or three miles from the town of Wichita Falls.   Deceased (Modgling) and wife kept the house, and defendant boarded with them. Defendant was a brother-in-law of Avis, and it seems that some reports he

had made to Avis concerning the manner Modgling was doing his part of the work upon the farm led Avis to send word by defendant to deceased to come in and settle his accounts. Deceased became angry, and, according to defendant's testimony, made threats against him. Defendant claims that these threats alarmed him for his safety. He went to town, rented a pistol, got the man from whom he rented it to load it, and returned to the farm. The facts immediately attendant upon the killing are stated in the opinion below.

*S. H. Hodges, L. H. Mathis,* and *J. H. Barwise,* for appellant, filed an able brief and argument on the motion for rehearing. Their brief, if they filed one, on the submission of the case in the first instance, has not come to the hands of the Reporter.

*James F. Carter,* District Attorney, and *Robt. A. John,* Assistant Attorney-General, for the State.—The continuance was properly refused, as the testimony sought could and would not have changed the result had the witness been present and testified at the trial. And the proposed facts were testified to by other witnesses who were present and testified, and the testimony would have been at best cumulative. Shaw v. State, 39 Texas Crim. Rep., 161. Besides, the process for the witness had not been returned and no steps had been taken to secure the return. Nairn v. State, 45 S. W. Rep., 703.

There was no testimony in the case which would justify a charge upon manslaughter. Penal Code, arts. 693, 702; Hardcastle v. State, 36 Texas Crim. Rep., 555; Fendrick v. State, 39 Texas Crim. Rep., 147.

If there was any self-defense in this case, the lower court gave a proper charge upon that subject. Hawkins v. State, 36 S. W. Rep., 443; Lawrence v. State, 36 Texas Crim. Rep., 173; Plew v. State, 35 S. W. Rep., 366; Abram v. State, 36 Texas Crim. Rep., 44; Hoover v. State, 35 Texas Crim. Rep., 342; Lynch v. State, 24 Texas Crim. App., 350.

It was not improper nor was it tantamount to charging upon the weight of evidence that the court italicised or underscored certain words of the charge. Sargent v. State, 35 Texas Crim. Rep., 325; Jackson v. State, 28 Texas Crim. App., 108.

DAVIDSON, Presiding Judge.—Conviction for murder in the second degree, and punishment assessed at confinement in the penitentiary for twenty-five years.

Appellant applied for a continuance on account of the absence of several witnesses, all of whom attended the trial, except Chambers and Miller. By Chambers it was expected to prove the dangerous and quarrelsome character of deceased, and by Miller the good character of appellant as a law-abiding, peaceable citizen. Appellant on the trial introduced the evidence of several witnesses as to his good character, which the State did not controvert. Several witnesses also testified to the character of deceased as a quarrelsome and dangerous man. The

continuance was refused, and appellant reserved a bill of exceptions. It is well settled that, if substantially the same testimony as that which is absent was adduced on the trial, defendant can not be heard to complain of the refusal of the continuance. Walker v. State, 13 Texas Crim. App., 618; Allison v. State, 14 Texas Crim. App., 402; Beatey v. State, 16 Texas Crim. App., 421; Tucker v. State, 23 Texas Crim. App., 512; McAdams v. State, 24 Texas Crim. App., 86. Even where the absent testimony is material and probably true, a continuance will not be granted, unless such absent testimony would, if adduced, probably induce a more favorable verdict to the accused than that found by the jury. For collation of authorities, see Willson's New Code Criminal Statutes, bottom p. 189. There was no error in refusing the continuance.

It is contended that the court should have charged the law applicable to manslaughter, and erred in refusing to give the requested instructions presenting this phase of the law. We do not propose to enter into a discussion of this question. The evidence before us does not suggest this issue.

Appellant requested the following special instructions, to wit: "You are charged that defendant had the right to arm himself with a deadly weapon, and go to the place where the homicide occurred, and at the time he did, and by such acts his right of self-defense will neither be abrogated nor abridgèd." Whether a party has the right to arm himself and go to the place of the homicide, would depend upon circumstances. Unquestionably he would not have the right to arm himself and seek the deceased and kill him. The fault in this charge is that it is too broad and does not state the circumstances, or any circumstance, which would authorize defendant to arm himself and seek his adversary.

Exception was reserved to the court's charge in regard to self-defense, in that it was too restrictive. The following portion of the charge is sufficient to illustrate the point: "The questions are: Was the slayer in present danger of great bodily harm at the time of the killing? Was the homicide committed in a bona fide effort to preserve himself from impending danger? One may stand on his self-defense, not only when his life may be seriously threatened, but he may do so when the infliction of serious bodily injury is threatened, and the danger is imminent and pressing. But a reasonable belief that another intends to inflict on the party some serious bodily injury, and that he is in such a position that he may carry his intention into effect, is not sufficient to justify the killing of him upon that apprehension. Such belief must be formed, in part at least, upon some act of deceased, showing that he has a present intention to inflict the injury; and, even then, the means used to repel the assault, and prevent the impending injury, must be only such as are necessary under the circumstances. An apprehension of future danger does not justify a homicide. The apprehension must be of a present and imminent danger. The right of self-defense is based upon and limited by necessity. When the necessity arises the right instantly accrues, and

when the necessity, real or apparent, ceases, the right no longer exists. It is not essential to the right of self-defense that the danger should in fact exist. It may be only apparent and not real. If it reasonably appears, from the circumstances of the case, that danger existed, the person threatened with such apparent danger has the same right to defend against it and to the same extent that he would were the danger real. And, in determining whether there was reason to believe that danger did exist, the appearances must be viewed from the standpoint of the person acting upon them, and from no other standpoint. If, to him, it reasonably appeared that the danger in fact existed, he had the right to defend against it to the same extent, and under the same rules, permitted in case the danger had been real. If, therefore, you find and believe from the evidence that defendant did the acts charged in the indictment herein, but if you further find that, at the time of doing them, J. D. Modgling was in the act of committing an assault, as hereinbefore defined, upon the person of the defendant, and it reasonably appeared to the defendant, from his standpoint, that from said assault he was in danger of losing his life or of sustaining serious bodily injury, and that such danger was imminent and pressing, and that, under such circumstances, the defendant did the acts charged in the indictment, he was justified in so doing, and you will find him not guilty." The contention here is that the expression, "immediate and pressing," is too restrictive, and is not justified by the law. The evidence shows that deceased was unarmed; that he was standing at the steps leading into the harness room, with a set of harness upon one arm and a hammer in the other hand. He had just emerged from the room for the purpose of mending this harness, when appellant approached from around the corner of the house. A conversation ensued, in which appellant's contention is that deceased used profanity, and gave him the lie. Appellant's testimony in this respect is as follows: "Just as I reached the corner of this little back room, Modgling stepped out of the south door of that little room where the steps are, going down the steps. He had some harness in one hand and a hammer, as well as I remember, in the other, and just as he stepped on the ground at the foot of the steps, he stopped, turned, and looked at me. I never said anything. He eyed me about ten seconds, I reckon, without speaking. I finally spoke, and said: 'Modgling, can you and I get along here without any trouble,—without holding any prejudice against one another?' He said: 'No; you have told a damned lie on me.' I said: 'Well, I'll take that; I don't want any trouble with you.' He had spoken rather loud, and just then his wife stepped out of the door of this little room. I said to Modgling: 'Did you tell Avis that I objected to you and your wife coming to town last Friday?' He replied: 'No; that's another damned lie;' and as he said this he turned and started into the house. I told him to stop, and said: 'I know what you are going after.' He replied: 'Yes, by God; and I will get it;' and kept going. I then drew my pistol and shot. At the time I shot he was right close to the door, and starting into it. From my knowledge of the kind of man he was, I believed he was a

desperate man, and believed he was going after his gun, and that I had to shoot to protect myself. I had reference to his gun when I said, 'I know what you are going after.' I would not have shot if I had not believed he was going after his gun." Defendant further states that the gun of deceased was kept in the front south room, on a rack above the bed of deceased, and he saw it there that morning. If in fact deceased was entering his house for the purpose of getting the gun, he would necessarily have to pass through the harness room, the dining room and kitchen and appellant's room, and out of the front door of appellant's room, and then south to near the middle of deceased's room, enter that room, go to the place where the gun was, take it down, and return. This exact distance we fail to find given, but it was about fifty or sixty feet by this route from where deceased was shot to the gun. Appellant also testified to previous threats on the part of deceased, and there was evidence to the effect that he was a dangerous man, and one likely to execute a threat. The charge as given was a correct enunciation of the law. In order to justify the homicide on the ground of self-defense, either with or without threats, the danger must be apparently or really immediate and pressing, imminent, and unavoidable. Hinton v. State, 24 Texas, 454; Holt v. State, 9 Texas Crim. App., 571; Penland v. State, 19 Texas Crim. App., 365; Weaver v. State, Id., 547. The identical question involved here was thoroughly discussed in Lynch v. State, 24 Texas Criminal Appeals, 350. The charge given was in conformity with the law as stated by the decisions. We do not know that we could add anything to what was said by the court in Lynch's Case. The opinion is thorough, exhaustive, and we believe unanswerable. The court, therefore, did not err in this respect.

It is not necessary to discuss the special charge requested by appellant presenting his view of this phase of the law. The court's charge was correct. Nor is there any merit in his contention that the evidence is not sufficient to justify the conviction. The evidence would have justified a conviction for murder in the first degree. The judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing, filed May 24, 1899, was overruled without a written opinion.—Reporter.]