## JOHN TOLLIVER V. THE STATE.

### No. 3865.    Decided April 22, 1908.

**1.—Murder—Evidence—Bill of Exceptions.**

Where upon trial for murder the defendant objected to the introduction in evidence of a double-barrel shotgun with a broken stock, as immaterial, and the record showed that said testimony illustrated the facts in the case, there was no error; besides the matter was not sufficiently explained in the bill of exceptions.

**2.—Same—Charge of Court—Defense of Property.**

Where upon trial for murder the evidence showed that if there was any dispute about property it had long ceased to exist at the time of the homicide, there was no error in refusing defendant's charge on the theory of defense of property. Following Lynch v. State, 24 Texas Crim. App., 350; Bush v. State, 40 Texas Crim. Rep., 539.

Appeal from the District Court of Falls. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*E. W. Bounds,* for appellant.—On question of defense of property: Lilly v. State, 20 Texas Crim. App., 1; Carr v. State, 55 S. W. Rep., 51; Ross v. State, 10 Texas Crim. App., 455; Milrainey v. State, 33 Texas Crim. Rep., 577; 28 S. W. Rep., 537; McGlothlin v. State, 53 S. W. Rep., 869.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE. This conviction was for murder in the second degree, the punishment assessed being fifteen years confinement in the penitentiary.

There are two questions suggested for revision: First. The court erred in admitting in evidence before the jury "a double barrel shotgun with the stock broken off near the trigger guard." Objection was urged to this on the ground that it was immaterial, irrelevant, and serves to throw no light on any issue in the case, and was calculated to inflame the minds of the jury and prejudice them against defendant. The bill is very meager, and matters connected with the introduction of the gun are not set out, nor is the statement of facts referred to for further explanation. As the bill presents the matter we are of opinion that there is no error shown. If we, however, should review the facts, we are of opinion still that there is no error. It is disclosed by the evidence that appellant was chasing the deceased with a shotgun and firing at him. The chase continued until they had reached a fence which was about a couple of hundred yards, perhaps, from where the parties had been first seen together in appellant's horse-lot. At the fence a shot was fired and the deceased fell. Appellant went to where the body of his prostrate foe was and struck him on the head. An examination of the body showed the skull to have been broken, and the broken gun was found in appellant's crib where he placed it subsequent to striking the deceased with it. The stock from the gun was found at another place. We believe this was admissible as illustrating the facts. We have held that in some cases it may be improper to admit in evidence before the jury the bloody clothing where such evidence would not tend to illustrate anything in connection with the case, and the purpose or effect of which would be to prejudice the minds of the jury. Of course, the admissibility of such testimony will depend upon its relevancy or tendency to illustrate some question in the case then on trial. There will arise cases, and have arisen cases, in which testimony of this character, while it may not be admissible, yet its prejudicial effect was not of sufficient importance to require a reversal.

In this particular instance we are of opinion the testimony was admissible, and in any event it could not have operated injuriously.

In regard to the second question, appellant suggests a charge should have been given submitting the theory of defense of property. We are of opinion this question is not raised by the testimony. The court charged very fully on the law of self-defense. This charge was, at least, fully favorable to appellant, if in fact such a charge was even demanded. Without undertaking to detail the evidence, it may be sufficient to state, in a general way, that appellant was the son-in-law of the deceased. That there had arisen trouble between appellant and his wife, in which the deceased sided with his daughter. There had been some trouble between the parties prior to the morning of the homicide, in which, doubtless, the deceased was the aggressor. These matters occurred sometime prior to the morning of the fatal meeting. On the morning of the homicide one of the witnesses passed the horse-lot of appellant and overheard the deceased ask appellant about that $155 or what he did with it, or something to that effect, and passed on. It seems that appellant owed the deceased $10, and deceased was rather urgently demanding payment, appellant stating his inability to pay until his crop was gathered. Appellant testified that while he and deceased were in the lot, these matters were brought up again, and he requested deceased to go away, that he and his wife would settle those matters between them. The deceased sometime previously obtaind written authority to settle such matters for his daughter with appellant. Nothing being arrived at satisfactorily, appellant said deceased got up and said he was going to take the horse appellant had there in the lot, and the trouble arose over that; that the deceased pulled his knife and undertook to use it on him. He ran to the house and secured his gun, being followed by the deceased. Three shots were heard by witnesses; one sounded, they said, as if it was in a creek bottom; some described it as if it was shot in a house. After this two more shots were fired, and appellant was seen chasing deceased for some hundred yards or more, and during which chase the said two shots were fired. On reaching the fence where the difficulty terminated, the last shot was fired, and after deceased fell, appellant used his gun on the head of the deceased, breaking the stock just below the trigger guard. If the deceased was in the wrong up to the time appellant secured his gun, the deceased then abandoned the difficulty, and was chased by appellant perhaps as far as two hundred yards and until he (appellant) succeeded in killing him. Appellant, however, says, on reaching the fence, that the deceased again undertook to use his knife on him, and that he knocked him down with the gun in protection of his own life. The court solves these questions in favor of appellant's theory, so far as the charge was concerned, but the jury against him on the facts. We fail to see how the question of defense of property enters into this question. Had the deceased been shot in the lot at the time appellant says he undertook to seize the horse in payment of the money due him, or for the protection of the

financial rights of his daughter, the question might have called for such charge, but all that part of the difficulty had ceased to exist; the whole question in regard to the horse had been abandoned, and the deceased was fleeing, being chased by a man armed with a double-barrel shotgun until he had succeeded in taking the life of the fugitive enemy. The charge on self-defense was favorable, and fully so, and we, therefore, say that there is nothing in the record, under the circumstances detailed, that called for a charge on the defense of property. All such questions had been abandoned, and indubitable evidence given of the fact by the flight of his adversary. It is true appellant insists that the deceased was trying to reach his home some distance away for the purpose of securing a gun and returning, and the suggestion from this is perhaps that at some time in the future the deceased might have returned and renewed the difficulty. That contention is too remote. Lynch v. State, 24 Texas Crim. App., 350, and Bush v. State, 40 Texas Crim. Rep., 539.

Finding no reversible error in this record, the judgment is affirmed.

*Affirmed.*

Brooks, Judge, absent.