### Allen Snell v. The State.

#### No. 3994. Decided May 26, 1909.

**1.—Assault to Murder—Continuance.**

Where the motion for continuance set out testimony which was not material to the issues in the case, the same was correctly overruled.

**2.—Same—Charge of Court—Manslaughter—Self-Defense.**

Where upon trial for assault with intent to murder the evidence showed that the defendant was not justified in shooting the party injured in self-defense, and that there was no adequate cause, there was no error in the court's failure to charge on manslaughter and self-defense.

**3.—Same—Evidence—Declarations of Third Parties.**

Upon trial for assault to murder there was no error in admitting testimony which involved the declaration of a third party in the absence of the defendant, but which was brought to the notice of the defendant through the witness who testified to such declarations, and which consisted of a message from defendant's grandmother to witness, requesting him to prevent more trouble between defendant and witness' brother.

Appeal from the District Court of Fayette. Tried below before the Hon. L. W. Moore.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Geo. Willrich* and *John T. Duncan,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was given two years in the penitentiary for assault to murder Henry Young.

The evidence disclosed that appellant and Arch Young were involved in a difficulty at a baseball game about thirty or forty minutes before the difficulty between appellant and Henry Young, a brother of Arch Young. During the difficulty between Arch Young and appellant appellant received a lick on the back of his head from Arch Young, supposed to have been inflicted by a baseball bat, or club of some description, which made a wound about an inch in length, and caused pain and bloodshed. Arch Young left the baseball grounds and went home. Appellant left and went to his grandfather's, stating that he would come again and settle the matter. He went to his grandmother's, changed his shirt, which was bloody, took off his baseball clothes, dressed himself, got a Winchester, and went to a little village called Colony, which village consisted of a store, blacksmith shop and a few houses. This little village is some distance from the place where the original difficulty occurred, and in a different direction. While appellant and his brother and a couple of friends named Fulkerson were en route to Colony they passed within 200 or 250 yards of the residence of Arch Young. Just about the time they reached the neighborhood of the store Henry Young overtook them, and, according to the testimony of appellant's witnesses, began to abuse appellant, applying some very unbecoming and offensive epithets. Appellant was still bleeding and in pain from the wounds on his head. After listening at the abusive language of Henry Young for a short while, his contention is that Arch Young was seen coming over the hill in the direction of where he and his friends were with what appeared to be a gun, whereupon appellant ran to his brother, who had the Winchester, took it from him and fired three shots at Henry Young, the first of which killed Henry Young's horse, another went through his hat, and the third missed him. When the shooting began Arch Young stopped and went back. Appellant fired the three shots, and the evidence is he could have shot more if he had desired. Arch Young was something like 200 yards from the shooting. This is appellant's side of the case. Henry Young testified in substance that he had, at the instance of appellant's grandmother, sought appellant for the purpose of urging him not to have any further trouble, and that appellant was very much enraged and quite abusive.

1. Appellant sought a continuance on account of the absence of one of the Fulkerson boys, who was present at the time of the difficulty, setting out the facts expected to be proved. These facts were, in substance, the same as stated above as being shown by appellant's witnesses on the trial. Viewed from the standpoint of the motion for a new trial, we are of opinion the court did not err in refusing the continuance. Appellant urges in his motion for a new trial error on part of the court in not charging the law applicable to manslaughter and self-defense. It being the first application, if the issue of manslaughter or self-defense, either or both, was or were in the case, the court should

have granted the application and continued the case. If these issues were not in the case, then there was no error in refusing the application.

2. We will treat together the assignments of error in regard to the failure of the court to charge manslaughter and self-defense. So treating them, we are of opinion the court did not err in regard to either or both of the questions. The only theory upon which manslaughter and self-defense can be urged arises out of the abusive language on the part of Henry Young at the time of the shooting, viewed in the light of the approach of Arch Young within 200 yards of where the shooting occurred, and, as appellant supposed, armed with a gun. There was, therefore, no actual danger suggested. The question arises: Was there sufficient appearance of danger to suggest self-defense? We answer this in the negative. In regard to manslaughter, there is nothing in the case to suggest adequate cause except abusive language on the part of Henry Young and the approach of Arch Young. Arch Young denied having a gun, but, be that as it may, these facts do not suggest adequate cause on the part of Henry Young. The epithet applied to appellant by Henry Young under the testimony adduced for appellant was "a son-of-a-bitch," and that he was no better than a certain prostitute whose name was mentioned by Henry Young during the colloquy. Insulting words of this character have not been held to be adequate cause. It has been expressly decided in the cases of Simmons v. State, 23 Texas Crim. App., 653, and Levy v. State, 28 Texas Crim. App., 203, that the epithet "son-of-a-bitch" does not constitute adequate cause, therefore insofar as the case relates to Henry Young, the assaulted party, the question of manslaughter was not raised. The evidence of the absent witness, Fulkerson, in view of the fact that appellant got the minimum punishment for assault to murder, could be of no practical value in the case. The evidence does not reduce the culpability below assault to murder, and it follows that the extenuating language sought to be proved by Fulkerson could be of no avail. Had appellant received more than two years for assault to murder there might have been trouble in this question, but as the absent evidence could not reduce the offense to a lower grade or minimize the punishment for the offense of which he is found guilty, there is no error viewed from the standpoint of the motion for a new trial in refusing a continuance. The fact that Arch Young was approaching, or had approached within 200 yards of the scene of the difficulty at the time of the shooting, would not suggest the issue of manslaughter or self-defense so far as Henry Young was concerned. If there had been a conspiracy or agreement between Henry Young and Arch Young that Henry Young should overtake appellant and stop him until Arch Young could come upon the scene and renew his former difficulty, then the facts might have thrown the parties in such proximity as to authorize a charge on self-defense and manslaughter. See Lynch v. State, 24 Texas Crim. App., 350; McDade v. State, 27 Texas Crim. App., 641; Ex parte Taylor, 33 Texas

Crim. Rep., 531; Bush v. State, 40 Texas Crim. Rep., 53S; Courtney v. State, 57 S. W. Rep., 654; Herrington v. State, 63 S. W. Rep., 562. In any event, under this record, appellant was not justified in shooting Henry Young, nor do the facts suggest adequate cause such as would legally justify sudden passion. There was, therefore, no error in refusing the continuance and in failing to charge the issues of self-defense and manslaughter.

3. A bill of exceptions recites that Henry Young, for the State, testified that Dan Meyers lived with Mr. J. R. Allen at the time this difficulty occurred. That the first this witness knew of the difficulty between appellant and his brother Arch Young was from Dan Meyers. Dan Meyers came to witness' house and brought a message from Mrs. J. R. Allen, the grandmother of appellant. The witness thereupon went to the house of his brother, Arch Young, and was at his brother's house at the time appellant, Claude Snell, and the two Fulkerson boys passed on their way to Hinton's store at Colony. Witness overtook appellant, and, upon reaching him, told him that his grandmother had sent the witness word by Dan Meyers to see and prevent him from having further trouble. The witness informed appellant what the message was that his grandmother had sent him by Dan Meyers. Objection was urged to this as hearsay. Under the circumstances stated in the bill, by reason of the fact of the communication to appellant by the witness Henry Young of the message, and his mission in accordance with the message from appellant's grandmother, the testimony was admissible. It brought notice directly to appellant of the witness' mission, and, although the matters occurring prior to the time Henry Young informed appellant of the matters would have been hearsay, yet upon these being communicated to appellant it became legitimate to so show and prove. There was no error in admitting this testimony.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

BROOKS, JUDGE, absent.