## JIM MITCHELL v. THE STATE.

### No. 3306.    Decided June 6, 1906.

**1.—Murder in Second Degree—Manslaughter—Explanation—Going Armed—Affirmative Charge.**

Where upon trial for murder the evidence showed insult to defendant's wife by deceased and a first meeting of the parties after this, and also the communication of threats; and that defendant armed himself to seek an explanation from the deceased; and there was also evidence of an attack upon defendant, the court should have affirmatively charged the law of self-defense and manslaughter.

**2.—Same—Threats—Charge of Court—Self-Defense.**

Where upon trial for murder the evidence showed communicated threats, it was error in the charge of the court to so limit defendant's right of self-defense as to practically shift the burden from the State to the defendant; and defendant was entitled to an affirmative charge under the law of threats as applied to self-defense.

Appeal from the District Court of Smith. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief for appellant.

*J. E. Yantis,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This is a conviction for murder in the second degree, with five years in the penitentiary fixed as the punishment. Appellant shot and killed his brother, Ned. Prior to the difficulty, deceased had made threats against appellant's life and had sought to seduce and debauch appellant's wife. On Saturday, prior to the killing, deceased had again threatened the life of appellant, and subsequently was seen with a pistol and knife. The night prior to the homicide, a would-be assassin had been about the premises of appellant, and tracks about a tree indicated where the party stood.

Appellant and his wife, after examining these tracks, came to the conclusion that they were those of deceased. That morning, a witness communicated to appellant the recent threats of deceased, and his wife informed him for the first time of the attempts of deceased to prostitute her. He had concluded to go to work for the day, and had gotten his team. He immediately turned, put his team up, got his gun, went to the grave-yard where deceased and others were at work, for the purpose of talking with deceased about these matters, as he testified. On reaching the scene of the trouble, two witnesses (white men) testified for the State to facts which show an unlawful killing on the part of appellant. Appellant's testimony was to the effect that when he reached the grave-yard he called his brother, and told him to come to him, that he desired to talk with him. Appellant was armed with a shotgun. Deceased started in the direction of appellant, as appellant says, armed with a spade. Seeing this, he told deceased not to approach him. He continued to come, and believing that he intended to kill him with a spade, appellant shot. His gun was a breach-loading shotgun, having one barrel loaded with No. 4, or as he terms it, "squirrel" shot. What conversation occurred between appellant and deceased is narrated by the two white men practically as by appellant. The difference in their testimony arises as to the immediate condition and attitude of deceased towards appellant when the shot was fired. They state that deceased did not have a spade, but had been working with a hoe, which he had dropped when he started to his brother.

If appellant killed deceased on account of insulting conduct, either with or without threats, and his mind was enraged beyond cool reflection, this offense could be of no higher grade than manslaughter, so far as the record is concerned. It is unquestioned that this was the first meeting after the communication of the insulting conduct. It was the first meeting after the communication of the threats. Appellant had the right to approach his brother and discuss these matters with him in a peaceable manner and to protect himself against an anticipated attack on the part of his brother, he had the right to carry his gun. Shannon v. State, 35 Texas Crim. Rep., 2. If after reaching him it became necessary or reasonably necessary, viewed from appellant's standpoint to kill to protect himself from death or serious bodily injury at the hands of deceased, he would be justified. The jury should be told plainly and affirmatively that such was the law. Not only so, but the law would authorize him to kill in self-defense, if there was an act on the part of deceased indicating to the mind of appellant that deceased was then about to execute the threat against his life. The jury should be affirmatively informed if deceased had threatened the life of appellant, and this threat had been communicated to appellant, and at the time of the homicide, deceased by some act then done, manifested an intention to execute the threat, appellant had the right to shoot. This is statutory. Article 713, Penal Code.

In regard to threats, the court instructed the jury: If they "shall find from the evidence that prior to the homicide the defendant had been informed that deceased had threatened the life of defendant, such threats of themselves would afford no justification for the offense, unless it be shown that at the time of the killing, the deceased had done or was in the act of doing some act or was making some demonstration manifesting an intention then and there to execute or carry out such threats or which was reasonably calculated, in view of all the evidence and circumstances of the case considered from defendant's standpoint to produce and did produce in the mind of the defendant, the belief that deceased was about to execute such threats, and in that event defendant would have the right to act upon such reasonable appearances of danger notwithstanding such danger might not in fact have been real and the killing under such circumstances would be justifiable. But if you shall find that deceased on the occasion in question had not done, nor was in the act of doing some act, or was not making some demonstration manifesting an intention then and there to execute or carry out such threat, if any, you find had been communicated to defendant, or which was not reasonably calculated, in view of all the evidence and circumstances of the case considered from defendant's standpoint to produce and did not produce in defendant's mind the belief that deceased was about to execute such threat, then defendant cannot be justified on that ground." These are the charges given by the court in regard to threats. These were not only given in a negative form, but were a limitation upon the right of self-defense, viewed in the light of threats, but it really, or at least practically shifted the burden from the State to the defendant. If appellant is entitled to a charge on the subject of threats at all, he is entitled to an affirmative one, and in fairness, under our law, the jury should be told, if they believe deceased had threatened to take the life of accused, or had threatened to do him some serious bodily injury; and they further believed that at the time of the homicide he did some act which caused defendant to reasonably believe or apprehend that his life was in danger or his person was in danger of serious bodily injury, under such circumstances he had the right to shoot and kill and would therefore be guilty of no offense. The charge quoted, does not submit the law as it is written in the Code, nor in harmony with the law or the theory of the law of self-defense. Because a charge was not given properly submitting the law of threats, in connection with the law of self-defense, this conviction is set aside and the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, absent.