### J. N. King v. The State.

No. 3935.   Decided March 20, 1907.

**1.—Murder in Second Degree—Charge of Court—Defendant's Right to Seek Explanation.**

Under the decisions of this State a person has a right, whether in a peaceful manner or not, to go and seek out another person and obtain from him an explanation of conduct that reflected upon him; and it was reversible error to limit in the charge of the court the right of defendant to the fact that he must go in a friendly spirit.

**2.—Same—Charge of Court—Weight of Evidence.**

Upon a trial for murder, a charge of the court which instructed the jury: "When his own original act was in violation of law then the law takes that fact into consideration in limiting his right of defense and resistance while in the perpetration in such unlaful act," was on the weight of the evidence.

**3.—Same—Charge of Court—Provoking Difficulty.**

Where upon trial for murder, the court charged that if the jury believed from the evidence that the defendant sought the interview in evidence for the purpose of provoking a quarrel for the purpose of killing deceased it would be murder though done in self-defense, without charging that the defendant must perform some act evidencing an intention to provoke a quarrel with a specific intent to kill before it could be murder, there was reversible error.

**4.—Same—Argument of Counsel—Misconduct of Jury.**

Upon a trial of a criminal case the defendant is entitled to a fair trial, and no argument should be made, and no facts should be brought forward to determine his guilt or innocence by the jury that are not testified to and are not produced as evidence upon the trial.

Appeal from the Criminal District Court of Dallas.   Tried below before the Hon. E. B. Muse.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

The State's testimony shows that there was some ill-feeling between defendant and deceased, with reference to some notes that the latter owed the former; that the deceased was engaged in the grocery business,

and that defendant had said that the deceased intended to rob him, that is, remove his goods and not pay defendant, and that if he did, defendant would kill him; that on the day of the homicide the defendant in company with another person went to the grocery store of deceased and some rash talk was heard; defendant said, "What did you tell Will White?" that defendant passed the damn lie and also stated, "Let him get his gun"; that immediately after using this expression, the defendant drew his pistol and fired twice into the store, and then walked across the street; that deceased was shot in the bowels, and was not armed; that the deceased said that defendant had shot him twice.

There was some evidence on the part of the defense that there was a knife found in the store, and that when defendant called the deceased "a damn liar," the latter turned around and went back into the rear part of the store where the knife was said to have been found; that when defendant first approached deceased at his door, he said: "Mr. Wilson, come here a minute," and Mr. Wilson said, "All right"; that deceased stepped up to the door and defendant said: "I understand you have been telling Will White that I have been meddling with his family affairs," and deceased said, "No, other parties have told me that you have been meddling with his family affairs," and that then defendant said: "You are a God damn old liar;" that when defendant shot deceased the latter had a knife in his hand and was coming towards defendant. This with the facts stated in the opinion is a sufficient statement.

*Crawford & Crawford,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for twenty-five years.

Appellant excepts to the following portion of the court's charge: "But you are further instructed that a party cannot avail himself of a necessity which he has knowingly and wilfully brought upon himself, whenever a party by his own wrongful act produces a condition of things wherein it becomes necessary for his safety that he should take life, or do serious bodily harm, then the law imputes to him his own wrong and its consequences to the extent that they may and should be considered in determining the grade of his offense (if any) which, but for such acts, would never have been occasioned. How far or to what extent he will be excused or excusable in law, depends upon the nature and character of the act he was committing (if any) which, produced the necessity that he should defend himself. When his own original act was in violation of law, then the law takes that fact into consideration in limiting his right of defense and resistance while in the perpetration of such unlawful act (if any); the court charges you

that the defendant herein J. N. King, under the law had a right to visit the place of business of the deceased Wilson in a friendly spirit, to settle a difficulty or misunderstanding, and if you believe from the evidence that the defendant visited the place of deceased Wilson in a friendly spirit to settle a difficulty or misunderstanding, between them, and under these circumstances defendant shot and killed deceased from either real or apparent danger, that from his, the defendant's standpoint, reasonably threatened him, the killing of the deceased by the defendant would be justifiable homicide and you should acquit the defendant, but if you believe from the evidence that the defendant sought the interview in evidence for the purpose of provoking a quarrel for the purpose of killing deceased, it would be murder though done in self-defense." This charge is erroneous. See Airhart v. State, 40 Texas Crim. Rep., 472. Under the authorities of this court defendant had a right, whether in a peaceful manner or not, to go and. seek out deceased and obtain from him an explanation of any conduct that reflected upon him. It is erroneous to limit the right of a defendant to the fact that he must go in a friendly spirit. Furthermore, the charge is on the weight of evidence in that the court says: "When his own original act was in violation of law, then the law takes that fact into consideration in limiting his right of defense and resistance while in the perpetration of such unlawful act." The jury may take said original act of violence or evil intent into consideration in measuring the guilt or the innocence of defendant in the perpetration of the offense, but it is erroneous for the court to tell the jury that the law takes said fact into consideration. Furthermore, the latter part of the charge wherein the court says: "But if you believe from the evidence that the defendant sought the interview in evidence for the purpose of provoking a quarrel for the purpose of killing deceased, it would be murder though done in self-defense." The law of this State is the defendant may seek a party for the purpose of provoking a quarrel for the purpose of killing deceased, and yet there is no law that punishes the defendant for seeking the deceased with a purpose to kill. He must then and there perform some act evidencing an intention to provoke a quarrel or difficulty with said specific purpose to kill before it could be murder in the first or second degree. The entertaining of a desire to kill is not a predicate for a charge on provoking a difficulty. The party at the time must do some act, utter some word, or do both, thereby evidencing an intent to commit violence upon the person of the deceased before his right of self-defense is forfeited. If appellant seeks out the deceased and does some act showing an intent to kill, thereby causing a difficulty or provoking a difficulty, he would be guilty of murder, but if he provoked a difficulty by words or acts after meeting deceased without the intention to kill, he would only be guilty of manslaughter. These matters, however, are thoroughly discussed by this court in the case above cited, and various other decisions too numerous here to collate. It follows, there-

fore, the charge of the court is erroneous and prejudicial to the rights of appellant.

Appellant also complains of the misconduct of the jury in the trial of this case, and of the county attorney in his argument to the jury. Neither of these matters do we deem it necessary to pass upon in view of the fact that this case is reversed upon the proposition above discussed, and we do not deem it necessary here to discuss same. However, we again emphasize the importance of prosecuting attorneys discussing the evidence adduced without indulging in any character of abuse either of the witnesses or opposing counsel, and we urge the trial courts to instruct the jury in their charge that they must not consider any extraneous matter as a reason or predicate for a decision, nor must they consider same or mention any matter not proved in evidence as a basis for argument in determining the guilt or innocence of the party on trial. The defendant is entitled under the Constitution of this State to a fair and impartial jury, and under the laws of this State he is entitled to a fair trial. No argument should be made and no facts should be brought forward to determine his guilt or innocence by the jury that are not testified to and not produced as evidence upon the trial.

For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*