### NAT McCLEARY v. THE STATE.

#### No. 61.  Decided October 27, 1909.

**1.—Murder—Charge of Court—Weight of Evidence.**

Where, upon trial for murder, the evidence raised an issue as to the credibility of the testimony of defendant's witnesses, it was reversible error to charge the jury that such testimony tended to contradict or impeach the defendant's witnesses; this was a charge on the weight of the evidence.

**2.—Same—Charge of Court—Defendant's Right to Seek Retraction.**

Upon trial for murder, where the evidence raised the issue of defendant's right to seek out the deceased and ask him to retract or apologize for insulting language towards the defendant, it was reversible error to limit such right to a peaceable mission of the defendant in seeking such retraction or apology. Following King v. State, 51 Texas Crim. Rep., 208, and other cases. Ramsey, Judge, dissenting.

Appeal from the District Court of Falls. Tried below before the Hon. Richard I. Monroe.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Nat Lewellyn* and *Spivey, Bartlett & Carter,* for appellant.—On question of charge on weight of the evidence: Harris v. State, 49 Texas Crim. Rep., 338, 94 S. W. Rep., 227; Byrd v. State, 49 Texas Crim. Rep., 279; 93 S. W. Rep., 114; Hammock v. State, 49 Texas Crim. Rep., 471, 93 S. W. Rep., 549. On question of charge on defendant's right to seek an explanation: Cases cited in the opinion.

*F. J. McCord,* Assistant Attorney-General, and *Tom Connally,* County Attorney and *Frank Altorf,* Assistant County Attorney, for the State.—On question of court's charge on impeaching testimony: Puryear v. State, 118 S. W. Rep., 1042; Champ v. State, 32 Texas Crim. Rep., 87; Hooper v. State, 29 Texas Crim. App., 614; Russell v. State, 53 Texas Crim. Rep., 500, 111 S. W. Rep., 658.

RAMSEY, JUDGE.—Appellant was convicted in the District Court of Falls County on the 24th day of February, 1909, and his punish-

ment assessed at two years confinement in the penitentiary. From such judgment of conviction he appeals to this court and asks that same be reversed for many reasons.

The facts in evidence showed that appellant who was a young white boy about nineteen years old on or about the 25th day of October, 1908, in the village of Durango in Falls County, shot and killed John Shederick. Shederick was a negro man some 35 years of age. Appellant established a good reputation in the community where he was raised as a peaceable, quiet, inoffensive man. The testimony of the appellant tended to establish the fact that the deceased was a dangerous and quarrelsome man, though this was contested by the State which introduced some evidence to the effect that his reputation was good as a peaceable, quiet and an inoffensive citizen. The evidence showed that on the day of the homicide appellant with Bonner Peevy, E. C. Stuart and Dallas Stuart left the town of Lott in a buggy and some distance from this town on the way to Durango they passed Will Reed, who was in a wagon in which was also the deceased and another negro. Soon after passing the wagon containing Reed and the negroes appellant and one of his companions went back to the wagon to get some whisky. The occasion of their going back and what occurred is disputed in the testimony, but it is conceded that there was some rough language used between the appellant and deceased. Appellant's witnesses testified that deceased called him a son-of-a-bitch and attempted to strike him with his knife. This was probably between four and five o'clock in the afternoon. The parties named above continued their journey to Durango where appellant obtained a gun and made inquiry for some large shot saying that he wanted to kill some ducks. Some of the witnesses testify that appellant walked with the deceased Shederick and another negro from near a man named James' place down to where the stores were situated in the village of Durango. Deceased was shot three times, one shot was over the eyebrows, another on the cheek and the third near the temple. Appellant by his testimony, if believed, makes a case of self-defense. He explains his possession of the gun with the statement that he intended to see Shederick and demand an apology and apprehended that as a result of his mission that deceased might assault him and for his protection and not for any other purpose he had provided himself with a gun; that later on he felt that if he exhibited the gun the negro might think he was looking for trouble and for this reason provided himself with a pistol, and with this on his person approached Shederick and said to him more than once that he thought that he owed him an apology; that on making this statement to deceased the third time, deceased turned towards him, put his hand in his pocket and said he would apologize to no white man, with an oath, and started as he believed with a weapon in his hand to advance upon him and that he shot Shederick in the belief

that his own life was in danger. Appellant's testimony to this effect was somewhat strongly supported by the evidence of E. C. Stuart, Bonner Peevy and one Stevens, and his contention found some support also in the testimony of Will Reed. The testimony of most of these witnesses related to the direct issue of self-defense and was in substantial accord with the statement and testimony of appellant and was, of course, of the highest importance to his defense. The county attorney acting for the State, sought to impeach these witnesses, and not wholly without success, by producing and having them identify, and subsequently offering in evidence, written statements some of which were made on the examining trial soon after the tragedy, and others made before the grand jury. In some of these statements, one of the witnesses at least who testified to the acts of deceased in putting his hand in his pocket and advancing on appellant, testified on the examining trial that at the time of the shooting or at any event at the time the first shot was fired and just before, he did not and could not see deceased. The testimony of other witnesses positively affirmed some matters on the trial as true, which were not mentioned at all as having occurred in their testimony on the examining trial.

1. In this state of the case, the court instructed the jury as follows: "There is testimony before you tending to contradict or impeach the witnesses Will Reed, E. C. Stuart, Bonner Peevey and Mose Stevens. As to the effect of said impeaching or contradicting testimony, if any, you are instructed that you can only consider the same for impeachment purposes, if at all, and for no other purpose." We think considered altogether that this charge must be held to be on the weight of the evidence. Santee v. State, 37 S. W. Rep., 436; Stull v. State, 47 Texas Crim. Rep., 547, 84 S. W. Rep., 1059. In the first cited case the court gave the following charge: "You are further instructed that evidence has been admitted before you tending to show that about the time defendant is charged to have received and concealed the property charged in the indictment he received property belonging to another person than R. K. Lane that was stolen. You can consider said testimony in determining what knowledge the defendant had with reference to the property described in the indictment at the time he received or concealed the same, if he did receive or conceal it, and for no other purpose." After averting to some other errors in this charge, Judge Henderson, speaking for the court, uses this language: "Now, in this connection the court, in the charge above quoted, tells the jury that the evidence admitted tended to show that defendant, about the time charged in the indictment, received the Felson goods, and that they were stolen. Webster defines the word 'tend' to mean as follows: 'To be directed as to any end or purpose; to aim; to have or give a leaning; to exert activity or influence; to act as a means; to contribute to.' As above

defined, the charge of the court would convey to the jury that the judge believed that the testimony had an aim or leaning in the direction of showing that such other goods were stolen; that said evidence contributed to show such fact. If the Felson goods had not been stolen, then the fact that the defendant subsequently had possession of the same would not constitute any inculpatory evidence against him as to having knowingly received the alleged stolen goods he is charged in the indictment to have received. If, on the other hand, said goods were stolen property, then it would constitute a criminative fact against the defendant. Certainly the court could not assume as an admitted fact that said goods were stolen, but it was his duty to submit such issue fairly to the jury, and it occurs to us that the use of the word 'tending,' in the charge of the court, was a suggestion to the jury that the evidence aimed and contributed to establish the fact that said Felson's goods were stolen, and so was an invasion of the province of the jury." The charge of the court considered in the case of Stull v. State, supra, was to this effect: "The testimony before you of defendant as to his having been charged with any other crime or crimes than the one for which he is now on trial was admitted only for the purpose of going to the credibility of the defendant as a witness, and for no other purpose, and you will consider it for no other purpose whatever." Commenting on this charge the court say: "Said charge is upon the weight of the evidence, and assumes that defendant had testified he had been charged with other crimes. It is also upon the weight of the evidence, because it tells the jury that it 'goes to his credibility,' which is equivalent to telling the jury that it affects his credibility, because the jury knows, as does any person with ordinary sense, that if it 'goes to his credibility' it can not strengthen it, but if it 'goes to his credibility' it 'goes' against his credibility. The court should have so instructed the jury on this phase of the case, so as to leave it with the jury as to whether it had any effect at all on defendant's testimony. It is a question for the jury to determine what effect any fact has on the weight to be given the testimony of any witness, and is entrenching upon the function of the jury for the court to tell them in his charge that 'certain testimony is admitted for the purpose of going to the credibility of the defendant as a witness.' " While it is true in this case the court says that the jury may consider the same for impeachment purposes, if at all, it is open to the criticism and objection that it begins with an affirmative statement that there *is* testimony before them *tending* to contradict the witnesses named. There is no provision of our criminal law which the courts have guarded more jealously than that prohibiting courts from commenting on the weight of the evidence. In respect to testimony so vital as that of these witnesses we cannot see on what ground this charge should be upheld and for this reason we think the case should be reversed.

2. There are quite a number of other questions raised on the appeal touching the admissibility of testimony, application for continuance and remarks of counsel, most of which we deem it unnecessary to discuss. Among other things the court instructed the jury as follows: "But in this connection you are charged that the defendant had the right, on a peaceable mission, to seek out the deceased and ask him to apologize to him, or retract the insulting language, if any, he claimed the deceased had used towards him, and he also had the right to arm himself for his necessary self-defense if he apprehended danger at the time he sought such apology or retraction, if any, from the deceased; and if you believe from the evidence that the defendant, on a peaceable mission, sought out the deceased and asked him to apologize to him, or retract the insulting language he claimed the deceased had used towards him, and that when he made such request, if any, the deceased refused to do so, and, if you further believe from the evidence that at the time the fatal shot was fired it reasonably appeared to the defendant, from the acts and demonstrations of the deceased, if any, or from the words of the deceased, coupled with his acts and demonstrations, viewed from the standpoint of the defendant, that the deceased was then making an attack on the defendant, or the defendant believed that he was in the act of making an attack on him, which from the manner and character of it, caused the defendant to have reasonable expectation or fear of death, or serious bodily harm, and that acting under such reasonable apprehension or fear, the defendant shot and killed the said John Shederick, then and in that event you will acquit him; or if you have a reasonable doubt thereof you will acquit him." The contention is earnestly made that this charge was erroneous and that the words "on a peaceful mission" placed an improper limitation on appellant's rights. Appellant refers, in support of his proposition, to the following cases: King v. The State, 51 Texas Crim. Rep., 208, 101 S. W. Rep., 237; Airhart v. State, 31 S. W. Rep., 214; Mitchell v. State, 50 Texas Crim. Rep., 180, 96 S. W. Rep., 43; Pratt v. State, 50 Texas Crim. Rep., 227, 96 S. W. Rep., 8; Milton v. State, 47 Texas Crim. Rep., 457, 83 S. W. Rep., 822 and Gant v. State, 55 Texas Crim. Rep., 284, 116 S. W. Rep., 801. The majority of the court think this charge, under the evidence, erroneous and that same should operate as a reversal. My own opinion is that in the respect complained of the charge is not erroneous but in accordance with all the authorities in this State, except the case of King v. State, 51 Texas Crim. Rep., 208, 101 S. W. Rep., 237. See Mitchell v. State, 50 Texas Crim. Rep., 180, 96 S. W. Rep., 822; Winters v. State, 37 Texas Crim. Rep., 582, 40 S. W. Rep., 303; Winters v. State, 51 S. W. Rep., 1110; Hall v. State, 42 Texas Crim. Rep., 444, 60 S. W. Rep., 769; Hall v. State, 43 Texas Crim. Rep., 479, 66 S. W. Rep., 783; Beard v. State, 47 Texas Crim. Rep., 50, 81 S. W. Rep., 33; Craiger v. State, 88 S.

W. Rep., 208, and Keith v. State, 50 Texas Crim. Rep.; 63, 94 S. W. Rep., 1044, and by comparison see Bush v. State, 40 Texas Crim. Rep., 539, 51 S. W. Rep., 238.

For the errors pointed out the judgment of the court below is reversed and the cause is remanded.

*Reversed and remanded.*