FOUNT MARTIN V. THE STATE.

No. 2462.   Decided October 29, 1913.

Rehearing denied November 26, 1913.

**1.—Assault to Murder—Sufficiency of the Evidence.**

Where, upon trial of assault with intent to murder, the evidence, although conflicting, was sufficient to sustain the conviction, there was no reversible error.

**2.—Same—Self-Defense—Charge of Court.**

Where, upon trial of assault to murder, the defendant claimed an accidental or unintentional shooting, and the evidence did not raise the issue of self-defense, there was no error in the court's failure to charge thereon.   Davidson, Judge, dissenting.

**3.—Same—Charge of Court—Limitation of Self-Defense.**

Where, upon trial of assault to murder, the evidence did not raise the issue of self-defense, a charge of the court that if the jury had a reasonable doubt that defendant went into the alleged restaurant upon a peaceful mission, to find him not guilty was not reversible error, and was more favorable to the defendant than was called for.   Following Puryear v. State, 56 Texas Crim. Rep., 231.   Davidson, Judge, dissenting.

**4.—Same—Evidence—Cause of Trouble.**

Upon trial of assault with intent to murder, there was no error in admitting in evidence the previous altercation out of which the subsequent assault to murder grew.

Appeal from the District Court of Bowie.   Tried below before the Hon. H. F. O'Neal.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Mahaffey, Thomas & Hughes, for appellant.*—On question of court's failure to charge on self-defense:   Scott v. State, 153 S. W. Rep., 871; Pace v. State, 61 Texas Crim. Rep., 436, 135 S. W. Rep., 379; Venters v. State, 83 S. W. Rep., 832; Keith v. State, 50 Texas Crim. Rep., 63; Sowell v. State, 32 id., 482; Jackson v. State, 15 Texas Crim. App., 84; Robles v. State, 5 id., 346; Stacy v. State, 48 Texas Crim. Rep., 95.

On question of court's charge on defendant's entering restaurant: Duke v. State, 61 Texas Crim. Rep., 19, 133 S. W. Rep., 432; Gaines v. State, 58 Texas Crim. Rep., 631, 127 S. W. Rep., 181; McCleary v. State, 57 Texas Crim. Rep., 139; White v. State, 23 Texas Crim. App, 154; Menly v. State, 26 id., 274; Cartwright v. State, 14 id., 486.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of court's failure to charge on self-defense: Teel v. State, 69 S. W. Rep., 531; Wesley v. State, 65 S. W. Rep., 904.

HARPER, JUDGE.—Appellant was prosecuted and convicted of making an assault on O. M. Chasteen with intent to kill him, and his punishment assessed at two years confinement in the State penitentiary.

There is a sharp conflict in the testimony, the defendant's theory being that Chasteen is guilty of assault to murder him, and that one Butler was acting with Chasteen. It appears that the shooting took place in Chasteen's restaurant in the town of DeKalb; that on the east side of the room a counter extended back some thirty-five or forty feet; at the north end thereof the counter elbowed to the west and extended west about two-thirds of the way across the room; just back of this counter a curtain was hung, and is thus described by a witness: "It was made out of cheap five cents a yard cloth, and was very thin; it was not sewed together; a rope run from one side to the other, and the end of the cloth was thrown over the rope and pinned; it was in strips about eighteen inches wide and hung from the rope to the floor, the strips not being sewed together, but hanging loose." Witness said it at times stood open. This description is placed in the opinion as appellant thinks this cloth partition material in the case. O. M. Chasteen, the chief prosecuting witness, testified, that near dark the night of the shooting, appellant, Fount Martin, with two boys took their seats at the counter and ate a meal; that while the three were eating appellant's brother, Newt Martin, was in front of the restaurant, and called one of the boys; that when this happened a conversation ensued in which appellant talked to him in a very offensive and insulting way (the language being such we do not care to embrace it in the opinion) and said that Newt Martin was mad at appellant and was going to whip the witness (Chasteen); that if he did not do it he, appellant, could do it, when witness replied then was as good a time as any; witness says when appellant went to leave the restaurant with the boys he remarked to witness, "I will see you again." That he was called out of the restaurant and was absent several minutes, and while out his clerk came to him and told him that appellant had returned to the restaurant with a shotgun and asked for him, Chasteen. That this frightened him and he went or sent for a shotgun and pistol, and sent for the constable; that when the constable came he told him the circumstances, and returned to the restaurant, placing the pistol on the shelf behind the counter, and carried the gun with him to a point near a gas stove and set it down, and then began to fry some oysters; that he was standing just behind the curtain near the stove when a gun was fired, three shots striking him in the shoulder; that he looked and saw appellant standing just inside the front door, and got his gun and shot at appellant, firing through the hole made to pass dishes through; that

appellant fired at him again, and he returned the fire, when appellant walked out of the restaurant.

Appellant testified and stated he and the boys did go in the restaurant and eat; that a conversation did come up about his brother Newt, but says he did not use the language attributed to him by Chasteen, but his version is that he stated the reason his brother Newt did not come in, that he (Newt) was angry about appellant trying to get some heirs to sue him as administrator of an estate. Some other conversation ensued, and that as he got up to leave, Chasteen, the State's witness, got a pistol and said, "You get out of here, you G—d d—n s—n of a b—h and stay out." That this made him angry, but he left. That he went to the store of Ralph Burns and told Burns about what Chasteen had called him and admitted asking Burns for a gun, but denies he told Burns he was going to kill Chasteen; he also went to the store of Clint Smith and tried to get a gun, but failed at both places. By this time says he had got cool and went back to Chasteen's restaurant to make friends with him, and had no gun on this trip. However, Powell and Vineyard say he did have a gun on this trip to the restaurant. Appellant says when he did not find Chasteen in the restaurant he left and went to the hardware store and purchased a gun and some shells from Ollie Burns, saying he intended the gun for his nephew. The gun was in fact charged to Newt Martin. After leaving the hardware store he was approached by some one whom he took to be Powell, who stated that Chasteen wanted to see him, appellant, and he returned to the restaurant. (Powell denies approaching appellant.) When he got to the restaurant he had the gun in his right hand pointing down; that the constable was present and approached him, attracted his attention, and as he did so the constable called to Chasteen, "Shoot him," when he was shot at by Chasteen. That while his, appellant's gun was then fired, it went off accidentally, with no intention on his part to shoot. That these were all the shots fired. In his statement that only two shots were fired he is supported by Swinney and Welch, who say that a train had just come in and they were at the depot some seventy-five yards distant and heard only two shots. On the other hand Chasteen is supported by his statement that four shots were fired by Powell, who states he was in the restaurant, and says he thinks five shots were fired. It is further shown by all the testimony that Chasteen fired at least one shot, and appellant's gun had two empty shells in it, he stating he supposed both barrels went off at once when the gun was unintentionally discharged.

Appellant introduced three witnesses who testified they had examined the cloth curtain and they found no shot holes in it, Swinney, Burnett and Morrell, placing them in position to make an investigation in this matter. Some of them say they found dents in the stove pipe and some holes in the tin part, yet they did not think they had been made by shot, it being appellant's contention that Chasteen had made these holes and indentations with a nail. Powell said he had never examined

the curtain, but the holes in the tin work on the stove were shot holes and were made he says when appellant shot at Chasteen. He was in the restaurant at the time of the shooting and corroborates Chasteen in his testimony almost in its entirety. Standberry and others corroborate Chasteen when he says that when appellant left just after eating his supper he remarked, "I will see you later," and say that Chasteen did not draw a pistol on appellent at this time as testified to by appellant, Powell saying further that he stayed in the restaurant and there was no pistol there at that time. Powell also testifies that when appellant came in the second time with the gun, he went and told Chasteen about it, and Chasteen did send for the constable. It was at this time he got the guns and brought them to the restaurant. The State further showed by Ralph Burns that when appellant first left the restaurant, he came to his store, asked for a gun, and told him he was going to kill Chasteen, saying Chasteen had called him a son of a b——h and he was not going to take it; that he returned in about ten minutes, and then had a shotgun, and repeated that he was going to kill Chasteen, and while he, Burns, did not hear the shooting, he learned of it within fifteen minutes of this time. Smith testified that appellant came to him to borrow a gun, but did not get it, and did not say what he wanted with it, but did tell him that Chasteen had called him a son of a b——h and threw a gun on him, and it was hard to take. Ollie Burns testified that shortly after dark appellant came into the hardware store and purchased a gun and some shells of No. 8 shot.

We have stated the testimony extensively as one of the main contentions of appellant is that the testimony will not support the conviction, contending that at the distance the gun was fired holes would have been prominent in the curtain that all could have seen. It may be said that testimony predominates in favor of the contention that there were no holes in the curtain, yet Chasteen swears that there were small shot holes in it, and he and Powell state conditions that it would have been probable for the gun to have been fired and create no holes in the curtain, they saying it was hanging down in strips, unsewed, and frequently one flap would stand apart. We are of the opinion that the testimony will sustain the verdict of the jury; and this was evidently the opinion of the trial judge who overruled the motion, and we would not feel justified in reversing the judgment on this ground, for if the State's testimony is to be believed, he left the restaurant saying to Chasteen he would see him later, goes to Smith's and Burns and tries to borrow a gun, telling Burns he was going to kill Chasteen. Failing to borrow a gun, he goes to Ollie Burns, buys a gun and returns to Ralph Burns with the gun, repeating that he is going to kill Chasteen; goes into the restaurant and asks for Chasteen; failing to find him, he leaves, but returns again, when the shooting occurs, Chasteen saying appellant shot at him when he did not even know he was in the restaurant. Powell corroborates Chasteen in saying that appellant fired at Chasteen twice, and appellant's gun showed two empty shells.

Appellant's next main contention is that the court erred in failing to charge on self-defense. The State's case would make a plain case of assault to murder, there being no suggestion in the testimony that appellant may have acted in defense of actual or apparent danger, when the State's witnesses say he fired the shot. Appellant introduced no witness, other than himself, who witnessed the shooting, and if self-defense is raised it must be by his testimony. If it raises or suggests it, then it would have been proper for that issue to have been submitted. He testified, as hereinbefore stated, and as bearing on this direct issue at the time he returned to the restaurant: That he had gotten in a good humor; that he received a message from Chasteen and went in obedience to that request; he saw Constable Butler standing at the end of the counter, and Butler commenced to knock on the counter; he started to sit down on a stool when Butler said, "Hello, Fount," and walked by him, and opened the door, and called appellant; that as he turned Butler said, "Shoot him, Orren," Chasteen being named Orren, when Chasteen shot him, thirty or forty shot hitting the gun; that he grabbed the gun with his left hand and it fired. That he does not know whether one or both barrels went off. That he did not shoot at Orren Chasteen, and did not intentionally shoot the gun. That he went in the restaurant with the intention of making friends. This is putting the matter in the strongest light for defendant. He says his gun went off accidentally; that he did not shoot at Chasteen, and if this is true, he would be entitled to an acquittal, but not on the ground of self-defense, but on accidental and unintentional shooting. Self-defense is where a man does some act on the ground that he is in actual or apparent danger. Appellant says he intentionally did no act to defend himself against the shot he says Chasteen fired at him, but his gun accidentally went off, and we are of the opinion the court did not err in failing to charge on self-defense, nor in refusing to give the special charges presenting that issue. We agree that the law is that if the evidence for the State, or the evidence offered in behalf of the defendant, or the evidence taken as a whole, raises the issue of self-defense, or any other defensive issue, it should be submitted to the jury in the charge, but in this case the State's evidence shows a deadly assault when Chasteen was doing nothing. The defendant's testimony shows an accidental discharge of the gun, and there is no testimony that Chasteen fired first, and then appellant intentionally shot at Chasteen, believing his life was in danger. He says he did not do this. The court charged the jury: "The defendant claims that the firing of the gun that he had was accidental. Now if you believe from the testimony, or have a reasonable doubt that the defendant's gun was accidentally fired you will find the defendant 'not guilty.'" This presented the issue as made by his testimony, and there is no complaint of this paragraph of the charge,—the complaint being that it was error to fail to charge on self-defense. The court also charged the jury: "If you believe from the testimony, or have a reasonable doubt that the

defendant, Fount Martin, went into the restaurant of the alleged injured party upon a peaceful mission and for the purpose of making friends, then you will find him not guilty." The complaint of this paragraph is that it limited appellant's right of self-defense. If the testimony raised the issue of self-defense, there would perhaps be merit in this contention, but as we hold the court did not err in holding that the evidence did not raise the issue of self-defense, this paragraph would, if anything, be more favorable to defendant than was called for. The defendant had testified he went into the restaurant to make friends with Chasteen, and in this paragraph the court tells the jury if they find this true, or have a reasonable doubt of its being true, to acquit defendant, regardless of what he did or did not do, after getting in the restaurant. Under this charge, to have convicted the defendant, the jury must have found that appellant went and got the gun and returned to the restaurant with the intent to carry into execution the threat he made to Burns—to kill Chasteen. However, this character of charge was approved in Puryear v. State, 56 Texas Crim. Rep., 231.

Appellant has three bills of exceptions, all relating to that portion of the testimony of Orren Chasteen, P. M. Powell and S. M. Standberry, in which they testify about the wordy altercation occurring between appellant and Chasteen, in which Chasteen testified appellant used insulting language to him and left with the threat that he would see him later, and about which appellant testifies that at the close of it Chasteen secured a pistol, cursed him and told him to get out of his restaurant. It is apparent from the entire record, regardless of whether the State's theory or the defendant's theory is the correct one, that it is this altercation out of which the subsequent hostilities and shooting grew, and there was no error in admitting the testimony.

We have carefully reviewed each and every ground in the motion for new trial, and while not writing on each of them, but rather treating some of them collectively, none of them present any error.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, Judge (dissenting).—Appellant was convicted of assault with intent to murder, his punishment being assessed at two years confinement in the penitentiary.

All the issues are directly in conflict, viewed from the different standpoints of the evidence. Briefly stated, omitting details, the evidence shows that the defendant and two little nephews entered the restaurant belonging to the alleged assaulting party, Chasteen, and were taking lunch. A wordy altercation came up between appellant and Chasteen in which Chasteen throws the blame upon appellant and appellant throws the blame upon Chasteen. The evidence on this phase of it is sharply in conflict. It is deemed unnecessary to go into a detailed statement of it. The State's evidence is to the effect that appellant left the restaurant in an angry mood, informing Chasteen

that he would return. Chasteen understood this to mean that there would be trouble on his return, and so thinking armed himself with a six-shooter and a shotgun. Appellant did return, and went away again. The State's testimony is to the effect that he was armed at the time he returned with a gun, but this is flatly denied by appellant. Appellant returned the second time; this time he was armed, and about this there seems to be no controversy. When he returned he found Butler, the constable, had also found his way to the restaurant it seems upon the call of Chasteen, and was in the back part of the restaurant with Chasteen. The place where these parties were located was screened off from the other part of the restaurant by means of curtains made of a thin domestic or "cheese cloth." These curtains "screened" off the kitchen. Chasteen was in the kitchen attending to culinary matters when appellant entered the restaurant. Appellant says he purchased the gun for some boy relative whom he had promised to give a gun, and entered the restaurant with no purpose of raising any trouble, but to try to make friends with Chasteen, but when he entered Butler rapped on the counter and came away from where Chasteen was as if to go out of the door of the restaurant. After reaching the south end of the counter, Chasteen being at the north end and behind the curtains, Butler called appellant's name, "Fount," and then holloed back to Chasteen, "Orren, shoot him." That immediately Chasteen did shoot him, and he was shot in various places, and his gun went off at the time, which he says was accidental. A load of shot was found in the counter below the top of it. Appellant denies shooting at Chasteen, and says he did not know how it occurred that his gun fired; both barrels of his gun were fired. Chasteen says that appellant shot at him first through the curtain, striking him in the shoulder with two or three shot. Small shot were used by both parties. Chasteen admits firing twice. The witnesses say there were four of five shots fired during the trouble. The evidence goes strongly to show there were no shot that passed through the curtain; but one witness says he thought he discovered where scattering shot had gone through. The testimony, we think, fairly shows that the shot did not go through the curtain. Be that as it may, there were four, possibly five shots fired.

Under the above statement if appellant returned to the restaurant for the purpose of shooting Chasteen and did shoot at him before Chasteen shot this presents the issue of assault with intent to murder in view of what had occurred previously. If he returned and did nothing to bring on the difficulty, and Chasteen shot and appellant's gun went off accidentally, he would not be guilty of any assault. If Chasteen fired first, as testified by appellant, and appellant's gun did not go off accidentally, but he fired it at Chasteen, there would be clearly the issue of self-defense under the facts. Appellant had the right to go to restaurant and talk with Chasteen; he had the right to go to the restaurant unless he did so for the purpose of raising the trouble and did raise it upon reaching there. Under the testimony, so far as

appellant's side of it is concerned, two issues were raised, first, that his gun went off accidentally when Chasteen shot him. Under his evidence Chasteen fired the first shot. Second, if appellant's gun did not go off accidentally, as claimed by him, but was fired intentionally after being shot at by Chasteen, then the issue of self-defense was in the case cogently. If as Chasteen testifies when appellant went in the restaurant he fired first, neither accidental shooting nor self-defense would be in the case, but these were issues raised by the facts. If we take Chasteen's testimony, appellant fired the first shot, then he returned the fire, and appellant fired again, and he, Chasteen fired again, making four shots. Taking appellant's testimony, Chasteen fired first, and then his gun went off accidentally, and the shooting continued. If Chasteen fired first, and the jury should not believe appellant's statement, that the gun was fired accidentally, they still could believe that his was the second shot and fired after Chasteen had shot at him. There being no issue of provoking the difficulty in the case by any act or word on the part of appellant, he would have the perfect right of self-defense, and it would make no difference that he testified his gun went off accidentally if the jury believed under this state of case that he fired intentionally. The issue of self-defense under all the authorities would be in the case. This question has been so often decided that the writer deems it unnecessary to cite cases. The proposition ought not to be debatable in Texas, that where a party goes to see his adversary with a view not of killing him or bringing on a difficulty, and the adversary does bring on the difficulty, the right of self-defense is not impaired. He still would be justified in resisting an attack on the part of his enemy. This question has been frequently adjudicated, and especially since Cartwright v. State, 14 Texas Crim. App., 486, and Shannon v. State, 35 Texas Crim. Rep., 2. This matter underwent a thorough investigation in an exhaustive opinion by Judge Ramsey in the Don Gray case, 55 Texas Crim. Rep., 90.

The trial judge charged the jury upon the theory that appellant's gun went off accidentally. We conclude, therefore, that he did not believe there was any evidence of self-defense and necessarily he tied the defendant's case to what the defendant personally testified on this particular issue. The trial court, charging upon this issue, could only have done so and evidently did only do so because of appellant's testimony, and bound him alone to that theory. This phase of the court's charge, however, recognized distinctly and clearly that if appellant's gun went off accidentally, that it was only after the shot was fired by Chasteen. If Chasteen fired the first shot for the purpose of killing or shooting the defendant, then if appellant's gun went off accidentally it was after Chasteen fired. If it did not go off accidentally, then it was fired intentionally by defendant. This is the strongest light in which this case could be put against the defendant on that theory. In either event appellant's gun was fired after Chasteen's gun was fired. This was an issue in the case which the jury might have believed and

could have believed, but the court did not see proper to charge this, and limited that theory of the case alone to the accidental discharge. If the gun was not accidentally discharged under circumstances testified by appellant, but was intentionally discharged, after Chasteen fired the shot, then appellant's right of self-defense would be unimpaired and perfect. He then had the right to shoot. This phase of the law was not given, and it was presented in almost every conceivable shape by appellant in the court below, not only on objections to the charge, but by requested instructions. It is the duty of the court to submit all the issues of a case made by the facts, whether he believes the testimony or not. The jury are the judges of the facts and the weight of the testimony, and credibility of the witnesses. The court in this particular phase of the charge confined the case to appellant's statement alone of accidental discharge after he had been shot by Chasteen. The accused is entitled to a charge on all phases of the testimony from the different sources it finds its way before the jury. If the State introduces facts that raises an issue favorable to defendant, a charge should be accordingly given to the jury. If the issues are favorable by defendant's personal testimony, those issues should be submitted to the jury appropriately, and also upon the whole evidence from whatever source it comes, the issues are just as much in the case as if testified to by the defendant himself. The defendant's case is not bound down alone to his personal evidence. This matter has been discussed frequently and the law held to be the other way. Scott v. State, 153 S. W. Rep., 871; Keith v. State, 50 Texas Crim. Rep., 63; Venters v. State, 47 Texas Crim. Rep., 280, 83 S. W. Rep., 832; Sowell v. State, 32 Texas Crim. Rep., 482. These are a sufficient number of cases on this question.

The court also charged the jury as follows: "If you believe from the testimony or have a reasonable doubt that the defendant Fount Martin went into the restaurant of the alleged injured party upon a peaceable mission, and for the purpose of making friends with the alleged injured party, then you will find the defendant not guilty." Various objections were urged to this phase of the charge. It is unnecessary to take up the different grounds of objection. It is true that if appellant went into the restaurant on a peaceable mission and for the purpose of making friends with Chasteen, it would not justify Chasteen in shooting him, but suppose he went in there not on a peaceable mission nor for the purpose of making friends with him as contended by the State, and did no act and said nothing that would justify Chasteen in shooting at him, then what would be his attitude in the case? Certainly, he would not be guilty under those circumstances if he went into the place and did nothing except to receive Chasteen's shots. Both barrels of appellant's gun are shown to have been shot. Suppose he went in upon a peaceable mission, and after getting in Chasteen shot at him; he certainly would have the right to return the fire if he had done nothing to provoke a difficulty. This

Vol. 71 Crim.-34.

charge would indicate to the jury that before appellant could be found not guilty they must find that he went into the place on a peaceable mission for the purpose of making friends with the other man. Under this charge, if that was not true, the converse of it was that if he went in there not on a peacable mission and not for the purpose of making friends, he should be convicted. Under all the authorities the appellant is not required to go in a peaceable frame of mind; he may be outraged in his feeling when he hunts his adversary, but until he does some act or says something that provokes the other man to shoot at him, or he does some act himself in shooting or bringing up the difficulty, he still would not be guilty. This matter has been the subject of various decisions, and this question was very thoroughly discussed by Judge Brooks in King v. State, 51 Texas Crim. Rep., 208. See also Airhart v. State, 40 Texas Crim. Rep., 470. These two cases have been followed in subsequent decisions. To meet this appellant asked the following charge: "If the defendant entered the restaurant of O. M. Chasteen, and if he did nothing to indicate that it was his intention to kill or inflict upon said Chasteen serious bodily injury, and if said Chasteen shot, or shot at, the defendant, then you will acquit the defendant regardless of any threats which you may find from the evidence that defendant may have made against said Chasteen, and regardless of whether defendant's purpose in entering said restaurant was peaceable or otherwise." While this charge is not artistically drawn, it does call the court's attention to the correct idea, and this phase of the law should have been given in charge to the jury. This is the settled rule in Texas.

Another question is presented. Appellant claimed by his testimony that when he entered the restaurant the last time and before the shooting, he did nothing to authorize Chasteen to shoot at him, and that Chasteen fired first. He also testifies at this point and in this connection, that Butler came from where Chasteen was along the counter, passing him, appellant, and calling his, appellant's name, and holloed at Chasteen to shoot him, Butler placing himself near the south end of the counter, and near the entrance to the restaurant. This would place Butler and Chasteen almost at opposite ends of the house with appellant between them or approximately so. Appellant claims that under these circumstances it showed a conspiracy between Chasteen and Butler to do what was done, that is, to shoot him. If Chasteen fired first, under the circumstances detailed by defendant, then evidently Butler was acting in concert with Chasteen. He was present aiding and encouraging, and calling upon him to shoot, and Chasteen did shoot. This would give appellant the right under the law. to have a charge submitted to the jury of his right of self-defense against both parties, they acting in concert against him. See Stacy v. State, 48 Texas Crim. Rep., 95; Branch's Criminal Law, sec. 450.

It is deemed unnecessary to quote the special charges asked by appellant and refused by the court submitting the issue of self-defense.

It is sufficient to say that question, so far as appellant's presentation of it to the trial court is concerned, is ample and full, and the court declined to so instruct in the general charge, and refused to give the special instructions. A charge on self-defense was required in the case and raised by the facts, and this although the defendant testified his gun went off accidentally, and he failed to explain how the second shot was fired. The issue is made by the facts, and the jury could have taken the view of it had they desired to do so, that Chasteen fired the first shot, and that appellant's gun may not have gone off accidentally, but that appellant intentionally fired. If Chasteen fired first and appellant then shot, either the first or second time, he still would be entitled to a charge on self-defense under the circumstances of this case. It is a fundamental proposition that the charge of the court must appropriately instruct the jury upon every issue raised by the testimony.

For the reasons indicated the judgment ought to be reversed and the cause remanded. Being unable to concur in the affirmance I enter my dissent.

[Rehearing denied November 26, 1913.—Reporter.]