INDEMNITY INS. CO. OF NORTH AMERICA v. SCOTT et al. (No. 288.)*

(Court of Civil Appeals of Texas. Waco. Nov. 19, 1925. Rehearing Denied Dec. 17, 1925.)

1. Appeal and error ☞931(3)—On appeal from general finding, every issuable fact considered in favor of appellee.

On appeal from a general finding, every issuable fact must be considered found in favor of appellee, if there is any evidence to support such finding.

2. Appeal and error ☞931(1)—On appeal from general finding, evidence read in light most favorable to finding.

On appeal from a general finding, evidence must be viewed in light most favorable thereto, rejecting all evidence favorable to the opposite contention, and considering only facts and circumstances tending to sustain finding.

3. Master and servant ☞373—Injury received by employee, seeking redress from insult by fellow employee held compensable as originating in work.

Where employee of slaughterhouse had refuse thrown in his face by another employee, and was shot by the other employee when evidently seeking redress for the insult, the injury had to do with and originated in work deceased was doing for his employer at the time, and was within Workmen's Compensation Law (Rev. St. 1925, art. 8309, § 1, subd. 5).

4. Master and servant ☞380—"Willful," as used in compensation statute, involves element of evil intent or malice.

· Under Workmen's Compensation Law (Rev. St. 1925, art. 8309, § 1, subd. 5), excluding from term "injury sustained in course of employment" injury caused by employee's willful intention and attempt to injure himself, or unlawfully injure some other person, the word "willful" involves the element of evil intent or malice.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Willful—Willfully.]

5. Assault and battery ☞54—Throwing refuse of slaughterhouse in face of employee aggravated assault and battery.

Where refuse was thrown in the face of employee of slaughterhouse, such action would not only be a gross insult to the employee, but would have amounted in law to an aggravated assault and battery, under Pen. Code 1925, art. 1147, subd. 6.

6. Master and servant ☞418(6)—Jury's finding on question whether slaying of employee was caused by willful intention to injure slayer held conclusive.

Whether shooting of deceased employee, who had started towards other employees with knife in hand for evident purpose of avenging the throwing of refuse in his face, was caused by deceased's willful intention and attempt to unlawfully injure slayer, within Workmen's Compensation Law (Rev. St. 1925, art. 8309, § 1, subd. 5), held for jury, and finding for claimant will not be disturbed, it appearing that deceased never declared his intention, had never got closer than 8 feet to slayer, had made no effort to strike him, and was not in position to commit battery, under Pen. Code 1925, art. 1141.

Appeal from District Court, McLennan County; Sam R. Scott, Judge.

Suit by the Indemnity Insurance Company of North America against Pinkie Scott and others to set aside an award in their favor by the Industrial Accident Board, wherein defendants filed a cross-action seeking recovery for compensation under the terms of the Workmen's Compensation Law. Judgment for defendants on their cross-action, and plaintiff appeals. Affirmed.

Bryan & Maxwell, of Waco, for appellant. F. M. Fitzpatrick, of Waco, for appellees.

GALLAGHER, C. J. Appellant, Indemnity Insurance Company of North America, instituted this suit against appellees, who are the surviving wife and minor children of Robert Scott, deceased, and the attorney representing them before the Industrial Accident Board, to set aside an award in their favor made by said Board. Appellant, among other grounds for setting aside said award, alleged that the injury received by Scott, which injury resulted in his death, was brought about by reason of his unlawful attempt to injure Lou Fowler, a fellow employee, and that such injury was not sustained in the course of his employment. Appellees denied said allegation, and filed cross-action, seeking recovery of compensation for the death of said Scott under and by virtue of the terms of the Workmen's Compensation

Statute of this state. The case was tried by the court and judgment rendered awarding appellees compensation in a lump sum, from which judgment this appeal is prosecuted.

[1, 2] The deceased, Robert Scott, was employed, at and prior to the time of his death, by the Brazos Packing Company. His said employer was a subscriber under the provisions of said statute, and appellant was the insurance carrier. We do not think it necessary to quote the testimony verbatim. The trial court, who heard and considered the, evidence, rendered a judgment for appellees. The finding of the court in favor of appellees being general, every issuable fact must be considered found in their favor if there is any evidence to support such a finding. In passing upon the sufficiency of the evidence to sustain each such finding, we must view the same in the light most favorable thereto, rejecting all evidence favorable to the opposite contention, and considering only the facts and circumstances which tend to sustain such finding. Hines v. Kansas City Life Ins. Co. (Tex. Civ. App.) 260 S. W. 688, 690, and authorities there cited.

Robert Scott, Lou Fowler, Stumpy Green and Robert Garrett were working in the butcher room of the packing plant. They were the only persons present at the time, and were all negroes. The room was about 18 feet wide and 20 feet long. The floor was concrete, and sloped to a drain in the center of the room. This drain emptied into a sewer. Animals were butchered in this room and their carcasses cut up and disposed of. Refuse from the slaughtered animals was thrown on the floor, washed into the drain and carried off by the sewer. All the above-named parties were at work at their respective tasks. Their location in the room is not clearly indicated, but it seems that Green and Garrett were working at a table, emptying and cleaning chitlings and throwing the refuse in the drain to be carried off by the sewer. Scott was working at a tub, cutting out hearts and livers and carrying them to the front of the room. Fowler was behind Green and Garrett, cleaning the floor. The sewer became stopped, and Scott went to it and bent over to unstop it. Just at that time some chitlings, thrown on the floor by Green or Garrett, burst and the contents splashed up in Scott's face. Both Green and Garrett said "Excuse me," but Scott became angry and asked who in the ―――― threw that stuff in his face. He went from the sewer back to the tub where he was working, and there cursed, and with an oath and a vulgar and offensive epithet said he was going to clean up that packing house. Scott was using in his work a large, sharp butcher knife. He had it in his left hand when he stooped to unstop the sewer. He changed it to his right hand on going back to the tub. He never called any one's name, nor indi-

cated any particular person when he threatened to clean up the house, nor at any time thereafter. Nobody said anything to him while he was at the tub. He did not say anything after he left the tub. Green testified that Scott turned from the tub and started toward Fowler; that he had the handle of his knife clasped in his right hand in stabbing position; that his hand was down by his side, but that the elbow was slightly flexed so that the point of the blade of the knife pointed toward his feet; that when he started from the tub Fowler said there was no use of that, but that Scott kept on coming, and when he was in about 8 feet of Fowler Fowler shot him; that Scott was directly facing Fowler when he was shot; that he did not think at the time that Scott was about to stab Fowler with his knife. Green was corroborated in the main by Garrett, but Garrett had his back turned to Fowler at the time of the shooting. Scott died in a few minutes without making any statement. Fowler did not testify. The surgeon who examined Scott's body testified that the shot entered at the side and passed through his body, and that the point of exit was some 2 inches lower than the point of entrance. This description of the wound was corroborated to some extent by the jumper worn by the deceased at the time, and which was introduced in evidence in the court below. No prior difficulty between Scott and Fowler was shown, further than a statement that on the day before Scott was skinning a beef and doing the same in an unskillful manner; that Fowler told him how to do it properly; and that Scott replied that he did not want Fowler to tell him anything.

Our Workmen's Compensation Statute provides for the payment of compensation for all injuries sustained by an employee of a subscriber in the course of his employment. Subdivision 5 of section 1 of article 8309, Revised Statutes 1925, defines the term "injury sustained in the course of employment." Such subdivison, so far as relevant to the issues here discussed, is as follows:

"The term 'injury sustained in the course of employment,' as used in this law, shall not include: * * *

"4. An injury caused by the employee's willful intention and attempt to injure himself, or to unlawfully injure some other person but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

[3] If the injury which resulted in the death of Scott had to do with and originated in the work which he was doing for his employer at the time he received the same, appellees were entitled to compensation therefor, unless such injury was caused by a

willful intention and attempt on his part to unlawfully injure Lou Fowler, as alleged by appellant. That such injury, under the facts above stated, did have to do with and originate in work which Scott was doing for his employer at the time is, we think, settled by the following authorities: Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 73, 28 A. L. R. 1402; McClure v. Georgia Casualty Co. (Tex. Com. App.) 251 S. W. 800, 802 et seq., and cases therein cited; Consolidated Underwriters v. Saxon (Tex. Com. App.) 265 S. W. 143, 145, 146.

[4, 5] Was the injury received by Scott caused by his willful intention and attempt to injure Fowler? The word "willful" is defined, in part, in Standard Dictionary as follows:

"Resulting from the exercise of one's own will; voluntary; intentional; distinguished in law from accidental or involuntary and generally implying evil intent and malice; as a willful trespass; willful mischief."

Since "willful" in the statute quoted is used to modify "intention," it evidently means something more than intentional or voluntary, and apparently involves the further element of evil intent or malice, included in such definition. In passing upon whether Scott intended to injure Fowler and whether such intention was willful, as above defined, we must necessarily view the situation from his standpoint at the time. It appears from the question which Scott asked at the time that he thought that someone had purposely thrown the refuse in his face. If that had been the case such action would not only have been a gross insult, but it would have amounted in law to an aggravated assault and battery. Penal Code 1925, art. 1147, subd. 6.

While Green and Garrett said "Excuse me," they did not say that they had thrown the chitling which caused the refuse to splash in Scott's face, or that such result was accidental. Fowler said nothing. He was cleaning up the floor, and Scott might have thought that he was responsible for the supposed insult and assault. It appears that Scott's threat to clean up the packing house was not directed at any one in particular, but was general. He had his knife in his left hand when the incident occurred. While he never laid it down but had it in his right hand when he advanced toward Fowler, his hand was down by his side and not in a position to strike. What was his purpose in approaching Fowler? Was it to assault him or to demand an apology such as had been offered by Green and Garrett? Our Court of Criminal Appeals has frequently held that a person feeling himself aggrieved by the language or actions of another may lawfully seek such person and ask him to retract or apologize, and that he may arm himself for his own protection before starting on such mission. Shannon v. State, 35 Tex. Cr. R. 2, 6, 28 S. W. 687, 60 Am. St. Rep. 17; McCleary v. State, 57 Tex. Cr. R. 139, 143, 122 S. W. 26.

[6] Did Scott's action in the premises amount to an actual attempt to injure Fowler? He never declared his intention in leaving his tub and approaching Fowler. He never got closer than about 8 feet of him. He not only made no effort to strike him, but his hand and arm were not even in a position to do so. He was never in a position to commit a battery on Fowler. Penal Code 1925, art. 1141. So far, we have discussed the evidence as detailed by Green and Garrett. Both of these witnesses testified that Scott was facing Fowler and walking toward him when he was shot. The evidence of the surgeon and the holes in the jumper worn by Scott indicate that Scott was not facing Fowler at the time he was shot, but that he had his side toward him, and that he was not erect and walking toward Fowler, but that he was stooped over at the time. We think the evidence in this case, considered in its entirety, raised an issue of fact with reference to whether the shooting of Scott was caused by his willful intention and attempt to unlawfully injure Fowler or not. The court found in favor of appellees on this issue, and such finding is not without support in the evidence.

Compensation has been allowed where the claimant began an assault upon a coemployee and was injured in the difficulty so begun by him, he laboring at the time under a mistaken impression that the person assaulted was the person who had just assaulted him. Verschleiser v. Joseph Stern & Son, Inc., 229 N. Y. 192, 128 N. E. 126. Compensation has also been allowed where the injured employee, by insulting language or conduct, provoked the difficulty in which he was injured. Knocks v. Metal Package Corporation, 231 N. Y. 78, 131 N. E. 741; Pekin Cooperage Co. v. Industrial Commission, 285 Ill. 31, 120 N. E. 530, 531. See, also, Western Indemnity Co. v. Pillsbury, 170 Cal. 686, 151 P. 398, 405, 406.

The only Texas case cited by appellant in support of its contentions herein is Harris v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 257 S. W. 998. It appears from the opinion in that case that Harris, a negro, was employed by an oil company, and that Smith, a white man, who shot and killed him, was in the garage business for himself; that Smith's place of business was next door to the place of business of the oil company; that the difficulty had its origin the day before when Harris entered Smith's place of business and used insulting language and indulged in offensive conduct; that Smith knocked him down and kicked him out of his office. The reason for Harris' conduct is not shown; neither is it shown that his visit

to the office of Smith had anything to do with the duties of his employment. Harris threatened to go home and arm himself and return and "get" Smith. The next day while Smith was on the sidewalk in front of his place of business, Harris appeared on the sidewalk in from of the adjoining place of business of his employer, and with his hands in his hip pockets and in an insulting manner, again declared that he would "get" Smith, whereupon Smith shot him. The court, under such facts, properly held that the fatal injuries received by Harris did not originate in his employment. The other cases cited by appellant are all from other states. They are all either contrary to the decisions of this state, or controlled by the language of the particular compensation statute under consideration.

The judgment of the trial court is affirmed.