GEORGE WINTERS v. THE STATE.

*No. 1177.   Decided April 28th, 1897.*

**1.   Murder—Imperfect Self-Defense—Provoking Difficulty—Charge.**

On a trial for murder, a charge of the court which limits the right of self-defense, when that is an issue in the case, by instructing the jury abstractly to the effect, that a party provoking a difficulty cannot avail himself of a necessity which he has knowingly brought upon himself; and if a party wrongfully produce a condition of things, wherein it becomes necessary for his safety that he should take life, or do serious bodily injury, then the law imputes to him his own wrong, is erroneous, in that it leaves out of view altogether the character of the wrongful act or the intent which may have actuated the defendant in doing the act. It should have instructed the jury what character of wrongful acts would, or would not, deprive the party of the right of self-defense.

**2.   Same.**

On a trial for murder, where the defense was, that defendant accosted deceased for the purpose of requesting an apology for ill treatment previously received at his hands, and that deceased cursed, abused and immediately assaulted him with a knife, and, that he only shot when deceased was in the act of taking his life or doing

him serious bodily harm with a deadly weapon. Held: He had the right to have his defense presented to the jury in a clear charge, untrammeled by any qualifications; especially a qualification involving an undefined provocation.

### 3.  Same—Provoking Difficulty—Charge.

Where the State's theory was, that defendant provoked the difficulty under the facts above stated. Held: The character of the provocation, in connection with the intent, should have been defined and set out in a separate and affirmative charge in behalf of the State.

APPEAL from the District Court of Hill. Tried below before Hon. J. M. HALL.

Appeal from a conviction for murder in the second degree; penalty, twenty-five years' imprisonment in the penitentiary.

Appellant was indicted for the murder of A. J. Shirley, on the 20th day of June, 1895, by shooting him with a pistol.

The essential facts, adduced in evidence on the trial, are stated in the opinion; and the charge of the court, upon provoking the difficulty and upon self-defense, are also set out in full in the opinion.

[No brief for appellant.]

*Nat. P. Jackson* and *Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at a term of twenty-five years in the penitentiary; hence this appeal. There is but one assignment of error that requires to be considered, and that is as to the charge of the court on self-defense. We will state enough of the facts of the case to show how the question of self-defense arose. It appears that some two weeks before the homicide the defendant was keeping a livery stable in the town of Brandon, in Hill County, and the deceased lived on a farm several miles in the country. Some two weeks before the homicide defendant made a horse trade with a son of the deceased. The deceased, shortly after the trade was made, being dissatisfied, went to the livery stable of the defendant, and demanded the return of the horse defendant had received from his son. The defendant refused to surrender the same, and an altercation ensued, in which the deceased was the aggressor, and he drew his knife on the defendant and abused him. Parties interfered, and prevented him from making the assault. It also appears that defendant was a suitor of Miss India Shirley, a daughter of the deceased, and that, about a week after the altercation at the stable, defendant, being invited, called on Miss India Shirley, at her father's house. While there deceased came to the door of the room and defendant remarked to him that he did not want him to think hard of him for trading for the mare from Horace Shirley; that he would offer an apology, and hated that any misunderstanding had grown out of it. Deceased, instead of accepting his apology, cursed and abused him, commanding him to leave his house. Defendant left, the deceased pursuing him with his knife in his hand. The theory of the State,

which is supported by some evidence, is that on the day of the homicide defendant and three other young men were breaking horses, and with design defendant had them go in the direction of the deceased's house, for the purpose of meeting the deceased and bringing on a difficulty. In this connection the State proved some threats made by the defendant against the deceased to the effect that, if he caught the deceased out, he would bring on a difficulty with him, and he knew what the deceased would do, that he would draw his knife on him, and then he would "fix" him. The theory of the defendant was that, with no design of meeting the deceased, defendant and his companions, by accident, rode in the direction of deceased's house. At any rate, the proof shows that the parties did ride in the direction of the house of the deceased; that when near the house defendant wrote a note, and sent it by one of his companions to give to a boy who lived on the deceased's place, by the name of Knight, to deliver to Miss India Shirley. The testimony in this connection shows that this was a preconcerted arrangement between the parties, as Miss India, in response to said note, sent a letter to the defendant. It appears that the parties went near the house of the deceased, and stopped at the mouth of the lane, and were there deliberating as to whether two of them should return and not proceed further, when the deceased, Shirley, rode up. According to the defendant's testimony (and his witnesses were the only parties close by and heard and saw all that occurred), the boys spoke to him, and he returned their salutation. Defendant said, "Mr. Shirley, I want to see you." He stopped, and defendant said, "Don't you think you owe me an apology for the way you treated me last Sunday?" He said he did not. Defendant said he had hurt his feelings the way he treated him. Deceased then cursed defendant, and called him a damned son-of-a-bitch. Both parties then alighted from their horses about the same time, deceased drawing a large spring knife and opening it. The parties were pretty close together when they alighted, the horse of the defendant being between them. Deceased came around the horse with his knife in his hand, cursing and abusing defendant. Defendant told deceased not to come on him with that knife, and cursed the deceased. Deceased still advanced, and defendant shot him. Some of the witnesses indicate that the first shot did not take effect; that the second shot did, going through his arm and breast. Two of the shots entered the back of the deceased, coming out in front. These shots had an upward tendency, according to the testimony of all the witnesses. This was accounted for on the part of the defendant's witnesses by the fact that, after the first two shots were fired, the deceased rather staggered off, and was stooping over or to one side when the other shots were fired. Defendant explains as to his continued firing, after deceased had staggered off, that the smoke was such and the excitement that he did not know what the deceased was doing, but that he thought he was advancing on him all the time. The State introduced some witnesses who were at a distance from the scene of the homicide, tending to show that the deceased was on his horse at the

time he was shot, and the defendant on the ground; that the deceased fell off of his horse after he was shot. No blood, however, was found on the saddle or on the horse, and this theory was denied by all of the defendant's witnesses who were at the scene of the homicide. On the question of self-defense the court charged the jury as follows: "A party may have a perfect right of self-defense though he may not be entirely free from blame or wrong in the transaction. If the blamable or wrongful act was not intended to produce the occasion, nor an act which was under the circumstances reasonably calculated to produce the occasion or provoke the difficulty, then the right of self-defense would be complete, though the act be not blameless. But you are further instructed that a party cannot avail himself of a necessity which he has knowingly and willingly brought upon himself. Whenever a party by his own wrongful act produces a condition of things wherein it becomes necessary for his safety that he should take life, or do serious bodily harm, then the law imputes to him his own wrong, and its consequences, to the extent that they may and should be considered in determining the grade of his offense (if any), which but for such acts would never have been occasioned. If the defendant, when he met the deceased, made the request of an apology of the deceased for what had happened between them previously, and if the deceased made such an assault upon the defendant as created a reasonable apprehension upon the mind of the defendant that he was in danger of losing his life, or of suffering serious bodily injury, at the hands of the deceased, as viewed from his (defendant's) standpoint, and if he fired the shot that killed the deceased as a means of defense only, then he will be guilty of no offense; but if he provoked the difficulty for the purpose of taking an advantage of any attack deceased might make upon him, then he would not be justified in taking the life of deceased, even though he did so to prevent deceased from killing him (defendant). A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant. If from the evidence you believe the defendant killed the said N. J. Shirley, but further believe that at the time of so doing the deceased had made an unprovoked attack on him, which, from the manner and character of it, and the relative strength of the parties, and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death, or serious bodily injury, and if the defendant began to shoot as a means of defense only, then he had the right to continue to shoot until he believed himself out of danger, and if, acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him; and if the deceased was armed at the time he was killed,

and was making such attack on defendant, and if the weapon used by him, and the manner of its use, were reasonably calculated to produce death, or serious bodily harm, then the law presumes the deceased intended to murder or aimed to inflict serious bodily injury upon the defendant." It will be noticed in the first portion of this charge that the court speaks of a blamable or wrongful act, such as "was not intended to produce the occasion," "or an act which was, under the circumstances, reasonably calculated to produce the occasion or provoke the difficulty." This charge leaves out of view altogether the character of wrongful act or the intent which may have actuated the defendant in doing the act. As an abstract proposition, it is true that a party cannot avail himself of a necessity which he has knowingly brought upon himself; and if a party wrongfully produce a condition of things, wherein it becomes necessary for his safety that he should take life or do serious bodily injury, then the law imputes to him his own wrong. But the charge fails to inform the jury what wrongful acts deprive a party of the right of self-defense. It might be that if these abstract propositions of law, when the judge came to apply the law to the facts, had been limited by a proper charge, then the abstract propositions would be harmless. However, we find, when we come to examine the charge as applied to the facts, that the character of wrongful acts which would or would not deprive a party of the right of self-defense is not explained. The first charge, in which the court proposes to apply the law to the facts of the case, is a correct exposition of the defense relied on by the appellant. But that charge closes with the following language: "But if he provoked the difficulty for the purpose of taking advantage of any attack deceased might make upon him, then he would not be justified," etc., and how he could provoke the dificulty is not stated. If defendant did some act not intended by him to provoke the difficulty, and the deceased assaulted him, defendant would not be deprived of the right of self-defense. The deceased might have taken offense at some act of the defendant not intended by him to provoke a difficulty, and so assaulted defendant. The vice in this charge is that the character of act or provocation is not stated, nor is the intent with which the defendant may have done the act which would deprive him of the right of self-defense stated. The succeeding charge on the subject sets out with the statement "that, before defendant would be justified, the jury must find that deceased made an unprovoked attack on the defendant," but this unprovoked attack is not defined. This vice of an unexplained provocation enters into both of the charges given by the court on the subject of self-defense—it ends the first, and begins the second. Now, if we refer to the facts of the case, when the parties met in the road defendant requested an explanation or apology about deceased's treatment of him on the Sunday night previous. Under the charges given, the jury might have regarded this request as a provocation. They might have believed that the defendant, under the circumstances, had no right to make this request, and that his doing so could

only have one signification; that is, that he did so for the purpose of provoking and bringing on a difficulty with the intent of killing the deceased. This might be true, and, under a proper charge of the court, the jury may have so found. We are not now discussing the facts of the case, but simply the charge of the court as applied to the facts. Appellant's defense was that he accosted the deceased for the purpose of requesting an apology for the ill-treatment which he suffered at his hands on the preceding Sunday; that he made such request in a polite and peaceful manner; and that he was then cursed and abused, and immediately assaulted by the deceased, before he did anything; that he only shot when the deceased was in the act of taking his life, or inflicting upon him serious bodily harm, with a deadly weapon; and he had a right to have this matter of defense presented to the jury in a clear charge, untrammeled by any qualification, especially a qualification involving an undefined provocation. See, Shannon v. State, 35 Tex. Crim. Rep., 2. We would not be understood as holding that it was not also the duty of the court to give the State's theory, but this should have been done in a proper and distinct charge. The character of provocation, in connection with the intent, should have been defined and set out in a separate and affirmative charge given on behalf of the State. The charge of the court, as above set out, was excepted to at the time, and special charges on the subject were asked by the appellant. These charges were at least sufficient to call the attention of the court to the error in the charge as given, but even this was not necessary. In our opinion, the charge as given was erroneous, and was calculated to mislead and confuse the jury. For the error of the court in its charge on self-defense the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*