AYCOCK v. McQUERRY et al.   (No. 7822.)

(Court of Civil Appeals of Texas. Dallas. Jan. 12, 1918. Rehearing Denied Feb. 16, 1918.)

1. DEATH ⚙️103(3)—PROVOKING DIFFICULTY —QUESTION FOR JURY.
   In action for wrongful death, whether defendant by kicking deceased provoked the difficulty *held* a jury question.

2. HOMICIDE ⚙️116(4)—JUSTIFICATION.
   If deceased intended to kill defendant, or it reasonably appeared to defendant that such was deceased's purpose, the killing was justifiable.

3. APPEAL AND ERROR ⚙️1002—DECISION ON CONFLICTING EVIDENCE — CONCLUSIVENESS.
   A verdict on conflicting evidence cannot be disturbed on appeal.

4. TRIAL ⚙️350(3)—ISSUES—REFUSAL.
   Where the evidence failed to raise any issue of apparent danger save from the knife held by deceased, and the court submitted such issue, it properly refused to submit issue whether it reasonably appeared to defendant that he was in danger of losing his life at the time he shot deceased.

5. DEATH ⚙️104(1) — SELF-DEFENSE — INSTRUCTIONS.
   In an action for wrongful death, a charge that, if defendant made an unlawful assault upon deceased, the latter had the right to stand his ground, and if it became necessary for defendant to kill deceased in defense of his own life, the killing could not be justified materially abridged defendant's right of self-defense.

6. HOMICIDE ⚙️112(5)—JUSTIFICATION.
   Although defendant provoked the difficulty, he did not forfeit his right to defend against a deadly assault, unless he intended to kill or inflict serious bodily injury.

Appeal from District Court, Collin County; M. H. Garnett, Judge.

Suit by Nettie McQuerry and others against A. J. Aycock. Judgment for plaintiffs, and defendant appeals. Reversed and remanded for another trial.

F. E. Wilcox, R. C. Merritt, and Wallace Hughston, all of McKinney, for appellant. G. R. Smith and John Doyle, both of McKinney, for appellees.

RASBURY, J. Appellee, Mrs. Nettie McQuerry, and her three minor children, sued appellant for damages for wrongfully, willfully, and maliciously killing Killis McQuerry, husband and father, respectively, of appellees. Appellant defended the suit on the ground that he killed deceased in defense of his own life, alleging particularly that deceased, who was angered at appellant, intentionally provoked a difficulty with appellant as a pretext for assaulting and inflicting upon him serious bodily injury, and that at the time appellant shot, deceased, by words and demonstration, evinced such intention, or it reasonably appeared to appellant, viewed from his standpoint, that such was the intention of deceased; also that it was the intention of deceased at said time to assault appellant with a knife, a deadly weapon, for said purpose or it reasonably appeared so to appellant, viewed from his standpoint at the time; also that deceased had threatened to kill and inflict upon appellant serious bodily injury, and at said time manifested an intention to carry out said threats, or it reasonably appeared so to appellant from his viewpoint. There was a jury trial, the case being submitted upon special issues, resulting in verdict for appellees for $11,500, of which $1,500 was apportioned to the wife and $3,333.33⅓ to each minor, followed by similar judgment, from which this appeal is taken.

The following facts disclosed by the record are not materially disputed: Appellant, at the time McQuerry met his death, was a merchant and farmer. McQuerry was then and had been the preceding year his tenant on

"halves." McQuerry was industrious and bore a good reputation in reference to the payment of his debts. At said time he had ·in cultivation 20 or 30 acres in cotton, which it was estimated would yield above a half bale to the acre, and had gathered two or three bales. Appellant had sued McQuerry for $50, alleged to be the damages accruing to appellant for McQuerry's failure to brake and sow in cane seed certain Bermuda and Johnson grass lands, and for $6.50 store account, and attached McQuerry's cotton. McQuerry, it seems, agreed to brake the land and appellant to furnish the seed. McQuerry claimed that he did not plant the land because appellant refused to furnish the seed. Appellant claimed to have furnished part of them. After the suit and attachment McQuerry went to Princeton, where appellant was engaged in business, and accompanied by Mr. Hooten, a local merchant, called upon appellant and inquired of him why he sued, when he knew he would have paid him. Appellant, in substance, replied that he did so because McQuerry owed him, and had not talked that way before. At this point McQuerry proposed that appellant purchase his crop, and offered to sell for $100. They finally agreed upon $75 for the crop, appellant to dismiss his suit, pay costs and receipt McQuerry in full. It was agreed that check for the sum should be drawn and delivered to Mr. Curtis, a local banker. McQuerry and Hooten left appellant's store. At this time Aycock armed himself with a revolver. Later, McQuerry and Curtis called upon Aycock for the check, and were informed that it was delivered by Aycock to Hooten. Upon being reminded it was to be delivered to Curtis, Aycock and Curtis entered Hooten's store and secured the check, McQuerry remaining in front. Aycock called Curtis' attention to an indorsement on the margin, providing for its payment only when McQuerry had surrendered possession of Aycock's house. Curtis left Aycock and informed McQuerry of the indorsement, and that he could not credit him with the amount of the chcek because of the indorsement. At this time McQuerry was just off the sidewalk in the gutter, and was to an extent aroused by what he evidently considered unfair treatment by Aycock, and which condition was apparently aggravated by the indorsement on the check. Aycock followed Curtis from Hooten's immediately, and as he emerged from the store the difficulty, which resulted in the death of McQuerry, occurred. The details of that occurrence at this point, with the shadings, fairly deducible from the evidence of the witnesses, present two theories, which are as follows: According to appellant, as he emerged from Hooten's store and approached the spot where McQuerry was, the latter closed a knife, with which he had been whittling, and said to Aycock, in substance, if he would put off his knife and pistol, he would whip him. Aycock's re-

ply was that he did not want any trouble, and for McQuerry to go home. Whereupon McQuerry made some remark which appellant failed to catch, and then made a "move" and said, "You have acted the damn rascal with me all the year." At this remark appellant advanced to McQuerry, and McQuerry advanced to appellant, and as they met McQuerry ran his hand in his left pocket, whereupon appellant kicked at McQuerry, and the latter struck appellant. Appellant then turned and ran from McQuerry about three or four feet, turning and immediately facing him again, at which time McQuerry had his hands down and it appeared to appellant that he was trying to open his knife, whereupon appellant drew his pistol, fired twice in rapid succession, and three times with the pistol in both hands. Appellant thought he was in serious danger at the time he fired. It appeared to him that McQuerry was about to cut him.

According to the witness Curtis when appellant came on the sidewalk McQuerry, who held his closed knife in his hand, told appellant to put up his knife and pistol and they would fight it out, or have it out, at the same time tendering his knife to witness, who did not take it. Appellant in a "commanding" tone told McQuerry "he had enough of his talk, and for him to go home," whereupon McQuerry accused appellant of having acted the rascal with him all the year, and whereupon appellant "lunged" at McQuerry or reached out and kicked him in the privates, and as he did so McQuerry doubled back in a stooping position and struck appellant on the temple. McQuerry stumbled or his foot slipped from the encounter, and as he balanced himself he stopped at the sidewalk, and as he so stood appellant drew his pistol and began firing and advancing, McQuerry in the meanwhile retreating, until he had fired five times. Witness thinks McQuerry may have advanced one step to meet Aycock. During the encounter McQuerry was at no time trying to open his knife. McQuerry did not follow Aycock up after he struck him.

Appellant's testimony fairly presents his theory of the occurrence, as does the testimony of Curtis similarly present appellees' theory thereof, and for that reason we deem it unnecessary to detail that of the other witnesses, since to do so would neither detract from nor add to the force to be attached to what we have stated.

[1, 2] In answer to certain issues of fact referred by the court the jury found that appellant, by kicking deceased, provoked the difficulty. The finding in the respect stated forms the basis of an assignment of error, the proposition asserted being that the finding is without support in the evidence, since it is disclosed by the record that appellant declined the invitation of deceased to engage in mutual combat, and that the encounter occurred only when deceased there-

after accused appellant of having acted the rascal with deceased. The record does, without material conflict, disclose that the difficulty ·in the sense of physical clash of the parties came when deceased accused appellant as stated. But it cannot be deduced therefrom, as matter of law, that deceased provoked the difficulty which resulted in the killing. That issue was, in our opinion, one of fact for the jury. The issue as to who provoked the difficulty was in the case as result of appellant's pleading and evidence, since appellees' claim for damages was based wholly on the allegation that the killing of deceased was deliberate and without justification, while appellant alleged that he acted in defense of his own life for several· reasons, among them being the allegation that deceased provoked the difficulty with intent to assault appellant. We understand the rule to be that he who provokes a difficulty in order to have a pretext for killing or inflicting serious bodily injury upon another loses his right of self-defense, and while no issue of deceased's right of self-defense could have arisen, since he did not kill, at the same time, if he did so· intend, or it reasonably appeared to appellant from his viewpoint at the time that such was deceased's purpose, the killing was justifiable. Hence the pertinency of the point raised. But, as suggested, we cannot concur in the contention that the finding is without support in the evidence. The effect of the finding of the jury is that at no time during the altercation was appellant in either actual or apparent danger from deceased, and that no act, reasonably calculated to provoke a difficulty, occurred until appellant kicked deceased, and that hence the former provoked the difficulty. That such a conclusion is deducible from the facts cannot, we believe, be reasonably denied. According to the testimony of the witness Curtis, deceased at no time was the aggressor, or did that which could reasonably be construed as supporting a finding that deceased provoked the difficulty. True, it is that deceased, justly or mistakenly feeling that he had been unfairly treated in his business relations, invited appellant to fight it out, closing his knife, which he held in his hand at the time, and tendering it to the witness Curtis, and when the invitation was declined and he was told in a "commanding" tone to "go home, appellant had had enough of his talk," deceased added that appellant had acted the rascal with him the entire year. Deceased's knife had been closed; he did not employ any threatening gestures, he did not advance upon appellant; his manner was determined but courteous.

[3] Considering what had preceded the facts just related in reference to the ·business relations of the parties, we conclude it cannot be said that the accusation was, as matter of law, calculated to exasperate appellant and justify him in resenting the same

by kicking deceased, but at most raised an issue for the jury. On the other hand, according to appellant, when the accusation was made deceased made a "move," and advanced to meet appellant, and while so advancing deceased ran his left hand in his pocket, the parties instantly meeting and striking at each other, appellant hurriedly retreating three or four steps, turning quickly and observing deceased opening, or appearing to open, a knife, when appellant shot. This theory, we are not prepared to say would not have supported a finding that deceased was, in a legal sense, guilty of provoking a difficulty which would have carried with it all the legal significance of that term and justified the killing. But it is apparent that the evidence is conflicting, and, the jury having accepted appellees' version of the occurrence, we are without authority to disturb the same.

[4] The court's refusal to submit appellant's special issue No. 3 to the jury forms the basis of another assignment of error. The refused interrogatory, in substance, inquired of the jury whether, viewed from appellant's standpoint, at the time he shot deceased, it reasonably appeared to him that he was in danger of losing his life or of serious bodily injury at the hands of deceased. The proposition advanced is that the issue so presented was raised by the evidence, but not distinctly and separately covered by the interrogatories submitted to the jury by the court. Bearing upon the issue presented in the refused interrogatory, the court did submit to the jury interrogatory inquiring whether the knife which deceased held in his hand at the time of the killing was an ·instrument with which deceased could have killed appellant or inflicted upon him serious bodily injury. The jury answered, Yes. By the succeeding interrogatory the court inquired of the jury whether deceased was attempting to use the knife upon appellant, or whether it reasonably appeared to appellant that deceased was about to use it upon him so as to inflict death or serious bodily injury. The jury answered, No. It is apparent that the difference in the interrogatory refused and the one submitted is that the former is a general question, under which the jury's answer would have covered any real or apparent danger from every source, while the latter is a specific question, under which the jury's findings would cover only any actual or apparent danger from the knife held by deceased at the incipiency of the altercation. Evidently, the trial judge was of opinion that the only danger, actual or apparent, raised by the evidence was from the knife. After careful consideration of the evidence we concur in such conclusion. The evidence of appellant, which presents the matter most favorably to him on that issue, authorizes the court's action. In addition to what we have already said, the appellant in

substance further testified that during their discussion of the settlement of their affairs deceased spoke roughly to him, and afterwards stood on the outside of appellant's place of business, constantly whittling with his knife and apparently angry, which induced appellant to arm himself before leaving his store. While appellant admits that deceased closed his knife when he invited appellant to fight, he further says that after retreating from the encounter, being the time appellant kicked and deceased struck with his fist, and then "whirling" and facing deceased, the latter was advancing, and appeared to be opening his knife, and, fearing that he would be cut, he fired.

The foregoing and those stated at another point herein fairly and correctly represent the facts upon which appellant acted, and which induced him to shoot deceased, and, being so, fail to raise any issue of actual or apparent danger, save from the knife held by deceased, from which it follows that the court correctly refused the interrogatory requested.

[5, 6] Complaint is made of the court's action in allowing appellees' special charge No. 1. The propositions advanced as result of such action will be better understood by stating: First, the substance of the court's general charge containing necessary explanations and definitions, which, omitting formalities, are: (1) Defined simple assault and assault and battery; (2) declared that one assailed in the manner defined had the right to stand his ground, etc.; (3) that in passing upon the acts and conduct of one assaulted in the manner defined, such acts should be regarded from such person's standpoint, etc.; (4) that verbal provocation would not justify assault or assault and battery; (5) that violence would not constitute assault when inflicted in defense of one's person from actual or apparent danger; (6) applied the rule by instructing the jury, if deceased made such an unlawful assault or threatened assault upon appellant at and before the homicide, and at such time it reasonably appeared to appellant, viewed from his standpoint, that he was then in danger of death or serious bodily injury at the hands of deceased, the killing would be justifiable because in necessary self-defense. The charge also covered threats. The special charge, supplementing the foregoing, told the jury, in substance, that if appellant made "an unlawful assault" upon deceased, the latter had the right to stand his ground and repel force with force, and if as a consequence of such "unlawful assault" it became necessary, in the progress of the altercation, for appellant to kill deceased in defense of his own life, such killing could not be justified as in self-defense. There are several criticisms of the special charge, none of which, in our opinion, are meritorious, save those which in varying terms assert that it abridged appellant's right of self-defense. After a very careful consideration of the evidence and a similar examination of the authorities, we conclude said charge did materially abridge appellant's right of self-defense. Committing an unlawful assault upon deceased might or might not have abridged appellant's right of self-defense, depending upon his intention and the character of the assault. Even though appellant provoked the difficulty, as found by the jury, he did not thereby forfeit his right to defend against a deadly assault by deceased unless he provoked the difficulty with intent to kill deceased or inflict upon him serious bodily injury. It was declared in Winters v. State, 37 Tex. Cr. R. 582, 40 S. W. 303, and approved in Young v. State, 53 Tex. Cr. R. 416, 110 S. W. 445, 126 Am. St. Rep. 792, that a charge which "leaves out of view altogether the character of wrongful act or the intent which may have actuated the defendant in doing the act" is erroneous. The charge under discussion does not attempt to define the character of provocation or unlawful assault which would, coupled with an intention to kill or inflict serious bodily injury, deprive appellant of the right to justify his act on the ground of self-defense. Stripped of verbiage, the charge declares that any unlawful assault by appellant upon deceased would deny the former the right to thereafter defend against actual or threatened danger at the hands of deceased. It will be observed that the honorable trial judge did, in effect, tell the jury that before appellant could justify his act in slaying deceased, because of actual or threatened deadly assault by deceased, it must have reasonably appeared to appellant, viewed from his standpoint, that it was the intention of deceased to inflict death or serious bodily injury upon him; but, notwithstanding it was just as important that the jury should also be told of the elements of an unlawful assault which would deprive appellant of his right of self-defense in case he provoked the difficulty, it was not done, but the jury were left to infer that the provocation, the act, or the intent was unimportant so long as the assault was unlawful.

Further, appellant's contention was that deceased provoked the difficulty in order to have a pretext for inflicting upon him death or serious bodily injury, and that his attack upon deceased was to prevent a threatened assault for that purpose. The court did not charge on that issue. It is as a consequence obviously difficult to say what may have been the conclusion of the jury if that issue had been defined, and a correct charge given defining the character of unlawful assault which would impair appellant's right of self-defense.

The remaining issues presented in the brief relate to matters of practice and the sufficiency of the evidence to sustain the verdict

of the jury. As to those first named they do not, in our opinion, constitute more than informalities which do not constitute reversible error, while, as to those last named, it would be obviously improper to discuss them in view of another trial.

The judgment is reversed, and the cause remanded for another trial.